## CITIZENS BANK v. BURRUS et al., Appellants.

### Division One, December 23, 1903.

1. **Estoppel: SURETIES ON NOTE.** A wife can not, on the ground that. she permitted her husband to hold out, not to the judgment creditor of the husband who sues to have her property subjected to the payment of that judgment, but to the sureties on the note on which that judgment was based, that he was the owner of her property, be· estopped to claim that the property was hers and that certain· deeds made to her by her husband were made in payment of debts, which he owed her. Unless the payee of the note was misled by the act of the wife, he can not invoke the rule of estoppel against her. If the sureties were induced to sign the note on account of her hus- band's apparent ownership of the property with her acquiescence, they can, after they have lost something thereby, invoke estoppel against her, but the payee of the note can not invoke it for them. Nor can the sureties invoke it in a separate action of their own until they have paid the note or otherwise been induced by her con- duct to part with something of value.

2. ———: **WHO MAY INVOKE.** Only those to whom a false represen- tation as to the ownership of property has been made with the ac- quiescence of the owner, and who have been led or induced to assume responsibility or part with something of value by said representa- tion, can invoke the rule of estoppel. It can not be invoked by another who sues in their behalf and at their expense. All actions must be prosecuted in the name of the real party in interest.

3. ———: ———: **PAYEE OF NOTE: NOTICE TO SUE.** The fact that. sureties on a note have been misled by the act of a wife in permit- ting her husband to hold out to them ownership in her property, and' that they have been thereby induced to become his sureties, and that they have given the payee written notice to sue on the note, which he did, and further notified him to proceed against the wife to have her property subjected to the payment of the judgment debt, indem- nifying him against all costs and liabilities, do not authorize the payee, who had in nowise been misled or deceived by the acts of the wife, to invoke in their behalf the rule of estoppel against her.

Appeal from Scotland Circuit Court.—*Hon. E. R. Mc-Kee,* Judge.

REVERSED.

*E. Scofield, Pettingill & Myers, J. M. Doran* and *J. M. Jayne* for appellants.

(1)   The general rule is that before a creditor can maintain a creditor's bill he must show he has exhausted his remedy at law or he must show that he has no adequate remedy at law and should he fail to make out a case entitling him to equitable relief his petition should be dismissed.   Humphrey v. Milling Co., 98 Mo. 542; Pom. Eq. Jur. (2 Ed.), sec. 1415; Bank v. Packing Co., 138 Mo. 94.   Respondent has an adequate remedy at law.   The securities were perfectly solvent and an execution against them would have made its debts, or it could have garnisheed the appellant, W. D. Burrus, and have reached any property it could reach by reason of this creditor's bill.   (2)   To create an estoppel, the person to be estopped must have been a party to the transaction, or have knowingly received some of the benefits.   Bigelow on Estop. (3 Ed.), 484; Blodgett v. Perry, 97 Mo. 273; McClain v. Abshire, 72 Mo. App. 395; Alkire Gro. Co. v. Ballenger, 137 Mo. 369.   (3) Sureties may require suit to be brought, but they must comply with section 4500, Revised Statutes 1899, and should give notice as required by said section.   Suit must be commenced within thirty days after service of notice and proceeded with with due diligence in the ordinary course of law to judgment and execution.   R. S. 1899, sec. 4501.   Note the language of this section: "In the ordinary course of law, to judgment and execution." In connection with this, we call the court's attention to the petition.   A party is bound by the statement made in his own pleadings. Knoop v. Kelsey, 102 Mo. 291. (4)   It is not claimed by respondent that Charles Burrus ever made any statements to it that he owned any property or that it loaned the money on the faith of any statement that Charles Burrus may have made to it in reference to any property he had or claimed to own.

*Smoot, Boyd & Smoot* and *Mudd & Wagner* for respondent.

(1)   Under the old equity practice, securities had the right by bill *"quia timet"* to compel creditors to allow the use of his name or proceed himself against principal debtor.   Peters v. Linenschmidt, 58 Mo. 464; Sisk v. Rosenburger, 82 Mo. 46.   (2)   Insolvency is sufficient after judgment to authorize a creditor's bill. The law does not require a useless proceeding.   Turner v. Adams, 46 Mo. 95; Pendleton v. Perkins, 49 Mo. 565. (3)   Where it is shown that an execution would be unavailing, the law does not require it.   Padock Hawley Co. v. McDonald, 61 Mo. App. 559; Turner v. Adams, supra; Dodd v. Levy, 10 Mo. App. 121.   (4)   The wife held the effects of the husband in trust for his creditor whether the conveyance was fraudulent or not, and the proper and appropriate remedy of the creditor is by bill in equity.   Iron Co. v. McDonald, 61 Mo. App. 567. (5)   It is not sufficient that there is a remedy at law, but must be as efficient to the ends of justice as the remedy in equity.   Iron Co. v. McDonald, 61 Mo. App. 559. (6)   The creditor can remove fraudulent conveyances after judgment.   Patton v. Bragg, 113 Mo. 595.   (7) A court of equity, one acquiring jurisdiction, will and can render any judgment consistent with facts proved and stated.   Green & Meyers' Practice, sec. 543.   (8) Defendants having neither raised the question of misjoinder or nonjoinder of parties, either by demurrer or answer to second amended petition, the law creates for them a waiver.   Boland v. Ross, 120 Mo. 208; R. S. 1899, sec. 602.   (9)   The law presumes that property acquired by wife during coverture was paid for with the means of the husband. Crook v. Tull, 111 Mo. 283; Sloan v. Torry, 78 Mo. 625.   (10)   A married woman can make an estoppel by conduct as a *femme sale* where it relates to her separate estate.   Ranners v. Gerner, 80 Mo. App. 483; Cottrel v. Spiess, 23 Mo. App. 35; Ingalls v. Fergu-

son, 59 Mo. App. 299.

ROBINSON, J.—This is a suit in equity by the Citizens' Bank of Memphis, Missouri, a judgment creditor of Charles Burrus, to set aside as fraudulent a conveyance from said Charles Burrus and wife, Mary, to William Burrus, of 153 acres of land in Scotland county, and to subject certain notes held by Mary Burrus, amounting in the aggregate to $1,055, to the payment of judgments held by plaintiff, aggregating the sum of $996, against said Charles Burrus and several securities who signed notes with him at plaintiff bank, which said securities have also been named as defendants in this proceeding.

The petition sets out the fact of the rendition of judgments in 1899 in favor of plaintiff, the insolvency of Charles Burrus, and of his ownership of a certain tract of land in Scotland county known as Burrus home place, comprising about 700 acres, together with a large amount of personal property thereon; the sale and conveyance thereof by said Charles Burrus, and the after-purchase of the land in controversy from the Scotland County National Bank with the proceeds accruing from the sale of the former tract; the conveyance of the latter tract in the name of his wife, Mary Burrus, to defraud his creditors and of her after-conveyance of said tract to William Burrus, a brother of Charles Burrus. The petition then alleges that the purchase price for the latter tract was all paid by said William Burrus to Mary Burrus, except the sum of $1,000, for which sum the said William executed his two promissory notes for $500 each, payable to the order of Mary Burrus, in three and six months, respectively, after the date thereof, which notes it is further averred are still held by the said Mary Burrus and remain unpaid. The petition then sets up the fact that the judgments declared on were obtained on account of money borrowed from plaintiff by the defendant Charles Burrus in 1896, evidenced by

certain promissory notes upon which the defendants Breedlove, Brem, Ladd, Shawley, Houston and Smith had signed as sureties, and that said sureties had notified plaintiff that they desired it to prosecute its claims to judgment, and also requested it to institute this proceeding to have the conveyance of the above named land set aside as fraudulent.    The petition then proceeds as follows:

"Plaintiff further alleges and charges the facts to be, that all the judgments hereinbefore mentioned, were and became liens upon all the real estate owned, either in law or in equity, by the said Charles R. Burrus." Further alleges that said Burrus is wholly and absolutely insolvent and is not the owner of any property that can be seized and sold on execution, except that herein mentioned and described.

"Plaintiff further alleges and charges that it is wholly remediless by or through the ordinary process or proceedings at law against C. R. Burrus.    That all debts, for which said judgments were rendered, were the individual debts of said Charles R. Burrus, and the plaintiff and the parties owning said judgments, were, before the institution of the suits thereon, notified by each and all of the securities to proceed to the collection of said debts against said C. R. Burrus, he being the principal and party primarily liable for the payment of the same.    That in equity and good conscience, he ought to pay for the same, and the property owned by him and fraudulently conveyed, as hereinafter alleged, ought to be subjected to the payment of the aforesaid judgments.

"Plaintiff further alleges and charges the facts to be, that on or about November 15, 1897, the defendant C. R. Burrus resided with his wife, the said defendant Mary E. Burrus, on a large farm, situated in Mt. Pleasant township in Scotland county, Missouri, the title to same being in said C. R. Burrus, he, in fact, being the owner of the same which consisted of about 700 acres.

That said C. R. Burrus, on or about said date, sold said farm and with the proceeds arising from said sale of said farm, purchased the north half of the southeast quarter, and the northeast fourth of the southwest quarter, and thirty-three acres, being all of that part of the southeast fourth of the northwest quarter, lying west of Memphis and Edina public road, and thirty acres being all of that part of the southeast fourth of the southwest quarter, lying west of said public road, all in section eleven, township sixty-four, of range twelve, in Scotland county, Missouri, for the price and sum of $5,500. That he purchased the same of the Scotland County National Bank, and he had title and conveyance to same made to and in the name of the defendant, Mary E. Burrus, his wife. That at the time said conveyance was made, said C. R. Burrus owed the debts herein sued for. That said deed is recorded in book 61, page 159, of the records of said county. That said deed was made by said Chas. R. Burrus for the purpose of hindering, delaying and defrauding his creditors, and same was accepted by his wife, Mary E. Burrus, for the purpose and with the intention of so hindering, delaying and defrauding the creditors of said C. R. Burrus. That afterwards, in the fall of 1898, for the purpose of complicating said transaction and with the fraudulent purpose and intent of hindering, delaying and defrauding the creditors of the defendant, C. R. Burrus, the said defendant, Mary E. Burrus and Chas. R. Burrus, conveyed the aforesaid land to the defendant, Wm. D. Burrus, and the same was received and accepted by the said defendant, Wm. D. Burrus, with the intent and for the purpose of hindering, delaying and defrauding the creditors of said Chas. R. Burrus. That both of said deeds and conveyances were without consideration and voluntary, and made for the purpose aforesaid.

"Plaintiff, therefore, says that, by reason of the notices given by said securities and by reason of insol-

vency of said defendant, C. R. Burrus, and by reason of the fraud of the defendants, Burrus, plaintiff has a right to maintain this creditor's bill and equitable proceeding, and prays for such relief as in equity and good conscience it is entitled to and for general relief, and further says that this petition and prayer is made for the benefit of said securities and at their request and by their consent.

"Plaintiff further alleges and charges the fact to be, that said sureties, having signed said notes as sureties for defendant, C. R. Burrus, and he, at the time, being the owner of about 700 acres of land in Mt. Pleasant township, Scotland county, Missouri, and a large amount of personal property, said sureties signed for him solely as his securities, the said notes upon which the said judgments were rendered as heretofore set out in this petition, and said plaintiff having been notified by said securities to collect the debts off of the principal debtor, C. R. Burrus, and in pursuance to said notice, plaintiff brought said suit and obtained said judgments.

"And plaintiff further charges the facts to be, that with the proceeds of said 700 acres of land, and of said personal property, said C. R. Burrus purchased the land heretofore described in this petition, and used $3,500 of such proceeds in paying for said land, and had the title of same taken in the name of defendant, Mary E. Burrus, and plaintiff further charges the fact to be, that as to the securities aforesaid of Chas. R. Burrus, said conveyance was voluntary and without consideration and at the time said C. R. Burrus was wholly insolvent, and further alleges and charges the fact to be, that afterwards, the defendants, Mary E. and Chas. R. Burrus, conveyed said land to defendant Wm. D. Burrus and executed a deed to him therefor, and all the purchase money therefor was paid by Wm. D. Burrus to said Mary E. Burrus, except $1,000, for which said Wm. D. Burrus executed and delivered to Mary E. Burrus and in her name, two notes for $500, due respectively

ninety days and six months after date, which said notes
are yet unpaid and are held and are in the hands of said
Mary E. Burrus and are past due, and plaintiff says that
said notes can not be reached, nor can the amount due
thereon be reached by or through the ordinary process
of law, and plaintiff further states that on all the judg-
ments heretofore set forth in this petition, judgments
were rendered on the — day of February, 1899, execu-
tions were duly issued on said judgment and that a
*nulla bona* return was made therein and that this suit is
brought by this plaintiff at the instance and request of
said securities, and before the institution of this suit
said securities indemnified this plaintiff against costs
and liabilities on account of said suit, on said debt, and
said suit is prosecuted for their benefit.''

The answer filed by the defendants, Charles, Mary
and William Burrus was a general denial.   When the
cause was reached for trial the court formulated and
submitted to the jury called to determine the fact, the
following issues:

''1.   Did defendant Chas. R. Burrus purchase land
of Scotland County National Bank with his own funds
and cause the same to be conveyed to his wife for the
purpose of hindering, delaying and defrauding his cred-
itors?

''2.   Were the lands purchased of the Scotland
County National Bank by Mary E. Burrus and paid for
with her own money?

''3.   Was the land conveyed to Wm. Burrus by
Mrs. Mary E. Burrus and Chas. R. Burrus her husband
for the purpose of hindering, delaying and defrauding
the creditors of Chas. R. Burrus?

''4.   Was said lands conveyed to Wm. Burrus by
Mrs. Mary E. Burrus and Chas R. Burrus without con-
sideration?

''5.   Was the sixty acres of the original farm that
had been conveyed to Mary E. Burrus purchased and
paid for with her own means?

"6. Was Chas. R. Burrus indebted to his wife at the time of the sale of the original home place in the sum of $2,747.77 for money loaned to him prior thereto or indebted to him in any amount?

"7. If you answer the above questions yes, you will state the amount you find he was indebted to her.

"8. Did Mrs. Mary E. Burrus purchase and pay for forty acres of land of C. W. Murray with her own money?

"9. Did Mary E. and Charles R. Burrus jointly purchase and pay for eighty acres of land of George Owens which was deeded to Charles R. Burrus?

"10. Did Charles and Mary Burrus jointly purchase and pay for forty acres of the Phillips land at sheriff's sale, the title to same being taken in the name of Charles R. Burrus?

"11. Did Mary E. Burrus knowingly suffer and permit her husband, Charles R. Burrus, to claim to own personal property of hers, and real estate she had a right to, that was in her name, and exercise acts of ownership over and to hold the same out to the world as his?

"If you answer the above interrogatory in the affirmative you will please further answer the following:

"12. Did either of the securities mentioned in the petition on account of such apparent and claim of ownership by said Charles R. Burrus, of his wife's property, sign his note as his security and become liable for the debt or debts sought to be recovered by this action?

"13. If you answer this interrogatory in the affirmative you will also state in your answer which surety was so induced to sign said note or notes."

The jury found in the affirmative on the second, fifth, sixth, eighth, ninth, tenth, eleventh, twelfth and thirteenth interrogatories, and in the negative as to the first, third, and fourth. To the seventh interrogatory their answer was, "two thousand dollars," and to inter-

rogatory thirteenth, their answer was, "Brem, Ladd and Shawley."

The findings of the jury were adopted by the trial court, and the following decree was entered in the case:

"It is, therefore, considered and adjudged by the court, that said sum of $1,065 is subject, and ought to be applied, to the payment of the debts to the plaintiff, and it is ordered and adjudged that plaintiff have and recover of and from the defendant, Charles R. Burrus, Mary E. Burrus and William D. Burrus, said sum of $1,065, and that they recover their costs laid out and expended off of Chas. R. and Mary E. Burrus.

"And it is further ordered that the defendants Chas. R. and Mary E. Burrus surrender said notes to the clerk to be cancelled by him and delivered to the said William D. Burrus, and that execution issue therefor."

From this decree Charles, Mary and William Burrus have appealed. It may be noted here, that no allegation is made in the petition filed, that in the procurement of the various loans upon which plaintiff obtained its judgment, either Charles or Mary Burrus made any representations to the plaintiff touching the ownership of the wife's property, or that the wife permitted her husband to hold himself out to plaintiff as owner thereof, or that the loan in question was made by plaintiff in reliance on such apparent ownership, and no proof along that line or to that effect was offered or made at the trial. The testimony on part of plaintiff tended to show that the notes upon which plaintiff obtained his judgment against Charles Burrus and his securities, were made in the year 1896 as the result of money borrowed by the said Charles Burrus from the plaintiff bank with the defendants Breedlove, Brem, Ladd, Shawley, Houston and Smith as securities, but that no one of the notes contained the names of all the above-named securities who have been joined as defendants in this suit, and that as these notes would fall due, they would be renewed from time to time by consent of the

securities until in February, 1899, when at the request of most of the securities on the different notes the plaintiff reduced them to judgment. That at the time said notes were given Charles Burrus and his wife resided on a large farm, containing about 700 acres, in Mt. Pleasant township, in Scotland county, the title to which, with the exception of sixty acres valued at about $1,800, was in his name, the latter sixty-acre tract being in the name of his wife, and as shown by defendant's testimony, had been purchased by her in 1892 and paid for by money derived from her father's estate, and the deed taken in her name and filed for record in Scotland county. The testimony also shows that there was considerable stock and other property on the farm at the time, some of which it appears was owned by the wife, but most of it was the property of the husband, and that all of it was controlled and managed generally by the husband, and by him was given in and listed for taxation in his own name, and that three only of Charles Burrus's securities (Brem, Ladd and Shawley) claimed to have signed the notes in question, on which their names appear, in reliance on Charles Burrus's apparent ownership of all property given in by him for assessment.

This land known as the home place, except the sixty acres owned by Mrs. Burrus, had been occupied by Charles Burrus and his family as a homestead for thirty years or more, and at the time of making the notes in question was mortgaged for something like ten thousand dollars. In November, 1897, Charles Burrus sold the entire 700-acre farm upon which he was then living, subject to the incumbrances thereon, for four thousand dollars in cash and some property in the State of Illinois; and from the cash received, paid to his wife $3,000 to apply on a two-thousand dollar indebtedness which the court found the said Charles Burrus was owing to his wife at the time on account of money borrowed, and as a part of what the wife was entitled to have re-

ceived from the sale of her 60 acres of said home farm tract, which said sixty-acre tract was valued at $1,800. Some time in the early part of the year 1898, Mrs. Burrus purchased from the Scotland County National Bank the 153-acre tract in controversy for $5,600, took the deed in her own name, gave the $3,000 received from her husband in part payment thereof, and executed a mortgage thereon to the bank to secure $2,660, the balance of the purchase money. Afterwards, in the fall of that year, she sold and in conjunction with her husband conveyed this land so purchased by her from the bank, to William Burrus, a brother of Charles Burrus, for six thousand dollars, the said William Burrus paying $1,100 in cash, surrendered to Mrs. Burrus certain notes held by him against her and her husband jointly, amounting in the aggregate to $1,240, gave to her his two promissory notes for $500 each, payable in three and six months respectively after the date thereof, and assumed to pay the mortgage of the Scotland County National Bank of $2,660 on the land.

Whatever the purpose of Charles Burrus may have been in selling the home farm, and paying to his wife three thousand dollars of the money received therefrom, there is nothing in the record to indicate that she, in accepting the same from her husband, had any other purpose in view than having satisfied, in part, what was justly due and owing to her from him. That her purchase of the 153 acres in question, and its sale afterwards, was in good faith, and not for the purpose of covering up property of her husband, was made most certain by the testimony. In our judgment, the evidence utterly fails to show any fraudulent intent on the part of Mrs. Burrus, either by act or deed, in the entire transaction.

While the record shows that Charles Burrus was much embarrassed during the entire history of the transaction related herein, and at the time of the institution of this proceeding was hopelessly insolvent, it is also

true that his co-defendants in the suits in which plaintiff obtained the judgments upon which this suit is predicated are perfectly solvent and amply able to pay off plaintiff's judgment claims if it sought or wishes to collect from them. It is also to be noted in this connection that no claim has been made in the petition, and that no proof was offered at the trial, that Charles Burrus ever held himself out to the plaintiff, or represented to it, that he was the owner of his wife's property or that he ever made any representations whatever to its officers in reference thereto, or that they were in anywise governed in the matter of making the loan to Charles Burrus by such facts; but plaintiff's contention now is that as Mrs. Burrus permitted her husband to hold himself out as the owner of her property to the securities, or a part of them, who signed the notes to the bank with her husband on the faith of such apparent ownership, she ought now be estopped from claiming the property in controversy as against the bank, who has brought this suit at the instance and request of the securities, and as it is alleged in the closing lines thereof, for their benefit.

In the first place, this is not an action prosecuted by plaintiff for and in behalf of the securities who signed with Charles Burrus the notes in question, although plaintiff does say in the closing lines of its petition, as above indicated, that such is its purpose. It is distinctly alleged that plaintiff yet holds and owns said judgments and that no part of same has ever been paid by said Charles Burrus or any one else, and the judgment decree as entered is in favor of the plaintiff personally, and not as the assignee of, or as the trustee for, the securities mentioned. In fact, the securities have been joined as co-defendants with the Burruses, in this proceeding, for what purpose, however, no reason is assigned or suggested.

Without stopping to comment upon the form of plaintiff's action, it will suffice to say at this time that

upon the facts shown, there is no place for the application of the doctrine of estoppel invoked against the defendant Mary Burrus that has resulted in the decree as rendered. As her husband made no statement whatever to the plaintiff bank, or to any of its officers or agents regarding the ownership of his property or his wife's property, and as plaintiff was in nowise induced to loan the money which it did to her husband Charles Burrus, on account of his apparent ownership of her property, no wrong was done the bank by the wife by acquiescence or otherwise in a false statement regarding the ownership thereof to others by the husband. Plaintiff was led into no error that should estop Mrs. Burrus from the assertion of the true facts regarding that property where it is sought to be taken as the property of her husband, by one not deceived by her conduct or action concerning it.

While no principle in our jurisprudence is better established than that where one by his or her act, deed or conduct, induces or causes another to believe in a certain state of facts, and that other acting upon it, parts with his money or property, the former will be estopped to deny that such fact really existed, in a controversy between said parties involving the question of the existence or non-existence of such fact or facts asserted or assumed; but equally as well founded is the rule that no one can invoke estoppel, to stay the assertion of a truth by another, who has not himself or herself been misled, or induced to do some act or thing to his or her injury, on account of some false act, conduct or deed of that other, which otherwise he would not have done or when he who invokes the rule had no knowledge of the false action of the other at the time he acted.

Applying this rule to the unquestioned facts of this case, as found by both jury and court, it must be manifest that Mrs. Burrus is not estopped from asserting her title to the notes in question, which she had received from the sale of the 153 acres of land in controversy,

previously purchased by her in good faith, and paid for with her own means, as against the plaintiff or any one, except those securities on her husband's notes at plaintiff's bank, who say they were induced to sign the notes on account of his apparent ownership of the wife's property with the wife's acquiesence, and they can not be heard to invoke estoppel against Mrs. Burrus in this proceeding, or in a kindred proceeding by themselves, as no definite wrong had yet resulted to them to this time, by means of what they say they did on account of her conduct in permitting her husband to claim her property as his own. Until the act or conduct which induced them to sign the notes with the husband of Mrs. Burrus at plaintiff's bank, had resulted in their having lost something, they would have no standing in court, in a proceeding against the property of Charles Burrus, and much less against the property of his wife, of which he had the appearance of owning only. Counsel for respondent has referred us to no authority sustaining the theory upon which the decree entered herein is predicated, and we apprehend the books would be searched in vain for its precedent.

As the plaintiff had not been misled or deceived by the act, conduct or representation of Charles Burrus, regarding the ownership of his wife's property, in which it is claimed she acquiesced, it can not, in this proceeding, invoke estoppel against the wife's assertion of title to the notes in question, derived through the sale of that property. Not having been misled or deceived by the act, conduct or representation of either Mr. or Mrs. Burrus, the plaintiff can not, in its own behalf, invoke estoppel against Mrs. Burrus. Neither can the plaintiff, being a stranger to the transaction between Charles Burrus and his securities, whereby the latter were induced to sign the notes held by plaintiff on account of his untrue statement as to the ownership of his wife's property with her acquiescence or approval, set up such acts and conduct in behalf of said securities as a ground of

estopped against the wife now asserting her claim of ownership of her property; for, as before said, only those to whom a representation has been made, or who have been led or induced to assume some responsibility or part with something of value, can take advantage of the plea of estoppel.

Under our practice act (sec. 540, R. S. 1899) all actions are required to be prosecuted in the name of the real party in interest. This, if nothing more, would preclude this case from being considered as one for the benefit of the securities. Moreover, the securities themselves would have no standing in court to subject the notes in question (belonging to and held by Mrs. Burrus) to the payment of the debt evidenced by the judgment against themselves and Charles Burrus, until they, as securities, had first paid the debt, which, it appears, from both the petition and the facts, they have not done. Neither does the fact that the securities notified plaintiff (as provided by sec. 4500, R. S. 1899) to proceed against Charles Burrus as the principal debtor on the notes held by the bank, and that suit was instituted in pursuance of such notice, and further, that this proceeding was instituted at the request of said securities, and that before doing so, the plaintiff was indemnified against all costs and liabilities, on account thereof, by the securities, as the petition alleged was done, entitle plaintiff, who is in no way shown to have been misled or deceived by any acts or representations of any one to its wrong or injury, to avail itself of the doctrine of estoppel in this action against Mrs. Burrus. When the court determined that Mrs. Burrus received from her husband $3,000 (that afterwards went into the land in controversy, the resale of which resulted in her getting the two notes that have been subjected to plaintiff's judgment by its decree) from the sale of the old homestead of 700 acres, on account of an honest indebtedness due to her from her husband in part, and the balance on account of money he had gotten from the sale of her

part of that tract, and that Mrs. Burrus had been guilty of no such misconduct regarding her property, as to cause the plaintiff to be deceived thereby, or to have given her husband a credit in plaintiff's bank which he otherwise would not have had, it then became a matter of no concern to the court whether or not Mrs. Burrus had improperly permitted her husband to use her property as his own, and in such a way as thereby to have induced some of the securities to have signed the notes in question with her husband at plaintiff's bank in reliance of such apparent ownership, and plaintiff's bill should have been dismissed.

Judgment of the trial court will be reversed, and plaintiff's bill ordered dismissed. All concur.