# WILLIAM A. CANNON, Respondent, v. PAUL H. GIBSON et al., Appellants.

### St. Louis Court of Appeals, January 9, 1912.

1. **PRINCIPAL AND AGENT: Authority of Agent: Collection of Note.** An agent to receive payment of a promissory note has no ,authority to receive anything but money in payment of it, and he may not sell or exchange it or accept the note of another in payment of it.

2. **———: ———: Ratification.** In order for the principal to ratify the unauthorized act of his agent, he must voluntarily assume it, on full information.

3. **ESTOPPEL: In Pais: Silence.** The silence of a party will not work an estoppel, unless it leads the adverse party to alter his position for the worse.

4. **PRINCIPAL AND AGENT: Collection of Note: Unauthorized Act of Agent: Ratification: Estoppel.** A holder of a promissory note secured by a deed of trust placed the note, indorsed in blank by the payee, in the hands of an agent to receive pay-ment. Thereafter, a third person purchased the land covered by the deed of trust, giving in payment unsecured promissory notes payable to him. The agent accepted from the third per-son's grantor certain of these unsecured notes, in payment of the secured note, marking the latter paid, and representing to the third person that the deed of trust would be satisfied of record. The holder of the note did not know of the transaction until later, and then repudiated it, in a letter to the agent, and directed him to procure money in payment; but she did not notify the grantor in the deed of trust nor the purchaser of the land that she had repudiated the transaction. *Held*, that the failure of the holder of the note to communicate her repudi-ation directly to the grantor in the deed of trust or the purchaser of the land did not constitute a ratification by her of the agent's unauthorized act in accepting the notes as payment, since there was no intention on her part to ratify; nor did it work an estoppel against her to deny the agent's authority, since her silence did not lead the parties not notified to alter their posi-tion for the worse.

5. **BILLS AND NOTES: Endorsement in Blank: Principal and Agent: Estoppel.** Where the holder of a note indorsed in blank by the payee places it in the hands of an agent to receive payment, and thereby gives the latter the appearance of being

Cannon v. Gibson.

its owner, he is estopped from setting up his ownership against a third person who dealt with the agent on the faith of his being the true owner; but, in order to invoke this doctrine of estoppel, the third person must have been influenced by such false appearance of ownership to do some act to his injury, which otherwise he would not have done.

6. ———: ———: ———: Estoppel: Sufficiency of Evidence. A holder of a promissory note secured by a deed of trust placed the note, indorsed in blank by the payee, in the hands of an agent to receive payment. Thereafter, a third person purchased the land covered by the deed of trust, giving in payment unsecured promissory notes payable to him. The agent accepted from the third person's grantor certain of these unsecured notes, in payment of the secured note, marking the latter paid, and representing to the third person that the deed of trust would be satisfied of record. *Held*, that the holder of the secured note was not estopped, as against the purchaser of the land, to deny the authority of her agent to accept the unsecured notes as payment, since the purchaser had turned over the unsecured notes to the grantor before he had any dealings with the agent, and was not, therefore, misled to his prejudice by the appearance of ownership of the note given the agent by reason of its being indorsed in blank.

Appeal from Lincoln Circuit Court.—*Hon. Jas. D. Barnett*, Judge.

REVERSED AND REMANDED (*with directions*).

*Dudley & Palmer* for appellants.

(1) Judge Baskett had no authority whatever to take Reid and Welch paper in exchange for defendant's note. And this applies as well to Cannon as to Gibson who knew the ownership of the paper. It was no payment. Mechem on Agency, secs. 375-383; Story on Agency, secs. 89, 181; 31 Cyc., p. 1373-1375, par. 3, A. and B.; Graham v. Savings Inst., 46 Mo. 186; Nichols v. Jones, 32 Mo. App. 657; Knoche v. Whitiman, 86 Mo. App. 568; Buchwalter v. Craig, 55 Mo. 71; Smith v. Johnson, 71 Mo. 382; Bank v. Live Stock Co., 113 Mo. App. 696; 30 Cyc., page 1187, par. 3; 9 Am. and Eng. Cases, note on page 1198; 2

Parsons on Bills and Notes, chap. 7, sec. 2, p. 164;
Edwards on Bills and Prom. Notes, side page, 550-
551; Tiedeman on Commercial Paper, sec. 375. (2)
Cannon had already traded before he heard of the
Basket mortgage, and Basket had already exchanged
the notes before he notified Cannon. There was no
estoppel. Smith v. Roach, 59 Mo. App. 115; Gabrill
v. Reardon, 62 Mo. App. 459; Advertising Co. v. Wan-
namaker, 115 Mo. App. 270; Acton v. Doley, 74 Mo.
67; Keeney v. McVoy, 206 Mo. 57. Since Judge Bas-
kett had no authority to trade off the paper by con-
tract it would be absurd to hold his trade nevertheless
binding by reason of his conduct. Rannells v. Ger-
ner, 80 Mo. 474. Nor is there any ratification of Bas-
kett's act, it is not pleaded, and ratification is based
on intention. Advertising Co. v. Wanamaker, supra.

*R. H. Norton* and *Avery, Young & Woolfolk* for
respondent.

(1) Authority to receive payment on securities
may often be implied from their possession by an
agent, and where a loan upon a note or bond and mort-
gage has been negotiated for the principal through
an agent and the security is left in the agent's posses-
sion and control, authority to make payments thereon
to the agent may in the absence of directions to pay it
elsewhere be implied. Presumption however is
founded upon the agent's possession of the securities.
Mechem on Agency, sec. 373; Cooley v. Willard, 85
Am. Dec. 296. (2) He who without intention of fraud,
has enabled any person to do an act which must be
injurious to himself or to any other innocent party,
shall himself suffer the injury rather than any inno-
cent party who has placed confidence in him. Story
on Agency, sec. 127; Cooley v. Willard, 34 Ill. 68; 85
Am. Dec. 296. (3) We call to our aid another well-
known principle of equity, that of the failure on the

part of Miss Basket to give seasonable notice of her intention to repudiate the acts of her brother in this transaction. A silence of the principal, his failure to repudiate the act, is eidence to be considered with other facts in the case, that he adopted it as his own, or ratified it. Advertising Co. v. Wannamaker, 115 Mo. App. 279; Corser v. Pauk, 41 U. S. 31.

STATEMENT.—This is an injunction proceeding to restrain the sale of certain lands under a deed of trust in the nature of a mortgage, plaintiff alleging that the note secured by the deed of trust had been paid off and discharged. Defendant Elizabeth Baskett is the owner or claims to be the owner of the note and defendant Paul H. Gibson is the trustee named in the deed of trust. Upon final hearing the court overruled a motion to dissolve the temporary injunction, theretofore issued, and made the injunction permanent. The defendants have appealed.

It appears from the evidence that on June 8, 1908, and prior thereto, John M. Gibson owned a tract of land in Lincoln county, which was subject to the lien of a deed of trust, given to secure the payment of a note for $785. The note was owned by Elizabeth Baskett and was then past due and in the hands of her brother, Judge W. H. Baskett, of Elsberry, as her agent, for collection. He was not to press for the payment of the principal, she being content to keep her money out at interest as it was, but was to collect the interest as it became due and to receive the principal if Gibson desired to pay it. This note had originally belonged to her brother as executor and on its face was made payable to "W. H. Baskett, Exr.," and by him had been turned over to her in partial payment of a legacy due to her on final settlement. The note bore the endorsement in blank of the payee. At all the times we are concerned with, Gibson had knowledge of the fact that the note belonged to Eliz-

abeth Baskett and that W. H. Baskett was holding it as her agent for collection. On June 8, 1908, Elizabeth Basket was absent on a visit in California and had been so since November, 1907. It was with affairs in this shape that on June 8, 1908, the plaintiff, Cannon, and John M. Gibson made an agreement of trade or exchange whereby Gibson, by warranty deed, was to convey to Cannon the land covered by the deed of trust and in consideration therefor Cannon was to transfer to Gibson certain unsecured notes of one Judge Reid for $2700. Cannon lost no time in complying with his part of this agreement but immediately on the same day and without waiting for any deed to be made to him, turned over all of the Reid notes to Gibson. The latter had told him of the deed of trust encumbering the property, saying it was held by Judge Baskett and had stated he would pay it off either in money or by having Judge Baskett accept some of the Reid paper for it. The next morning Gibson, Reid and Baskett met in Gibson's office at Ellsberry. Baskett was willing to take from Gibson part of the Reid notes at par in payment of his sister's note but requested that Reid make a new note for the proper amount—this old note being disfigured with credits, etc. Therefore Gibson wrote out a new note payable to Elizabeth Baskett, Reid signed it and Baskett received and accepted it. At Gibson's suggestion the mortgage note was marked paid, but Baskett retained it, promising that in a short time he would go over to Troy and release it of record. Gibson then asked Baskett "to show Cannon his land is clear," and Baskett said he would  Baskett then went to Cannon's store and told him they had fixed up the papers and he had taken the Reid note for the mortgage note and was going to Troy in a few days to have the latter cancelled. Cannon testified as to this, "I supposed they were his notes. He took them out of his pocket and says 'here's these notes, been marked paid.' I never

took them and looked at them. Said he would have the record satisfied." This was the first time Baskett and Cannon had said anything to each other about the matter. On cross-examination Cannon testified: "Of course I bought the land and he (Gibson) was to give me a warranty deed for it. That was the contract and I was to give him some notes aggregating something like $2700. . . . First I knew about Baskett, Gibson says, 'There's a mortgage on the place. I have got to satisfy that, of course. I give you a warranty deed.' I bought from Gibson. Baskett came by and told me what he was going to do. Showed me the notes. *I never looked at them.* Thought it would be all right. Had no dealings with Baskett except he voluntarily told me he had already taken these other notes, clean notes, from Judge Reid. *The transaction had already been closed.* . . . Gibson told me 'Baskett holds a mortgage' and spoke about the paper, if he didn't take that paper he would pay him the money, and of course he was to give a warranty deed, that was his business." It being suggested to Cannon on cross-examination that he had not relied on Baskett in the matter but had relied on Gibson to clear the title, he said he had "never thought anything much about it." He further testified that when he traded with Gibson he gave him the Reid notes; that that was on Monday, the day before he, Cannon, got the deed; that they traded one day and the deed was made the next day. On June 17, 1908, eight days after Baskett had taken the Reid notes in payment of the note he held for his sister, it developed that Judge Reid was insolvent and his notes worthless. All this time Elizabeth Baskett was in Colifornia and there is nothing in the evidence to indicate that she had any knowledge of this transaction, until July 8, 1908, when she received a letter from her brother advising her of it and also advising her that Judge Reid was insolvent. This latter fact she had learned from a home newspaper

but did not know she had any direct interest in the matter until she received her brother's letter. Immediately after receiving her brother's letter she wrote him a letter as follows: "Huasna, July 9, '08. Dear Brother:—We learned from Democrat of Judge Reid's failure and I am most awfully surprised to find my note which I thought so well secured involved in this trouble. I am so worried, just to think it's half my living and I absolutely refuse to ratify your action in making the exchange of notes without my knowledge and that too without security, so I demand that you hold the old note instead of the note of Judge Reid. I empower you to represent me in this matter in securing my money. I expect to start for home about 20th of present month. Della will probably make trip with me. With love to all. Lizzie." After writing the letter to her brother, Miss Baskett remained in California until the last of July and then went to Hannibal, Missouri, where she stayed a week or two, arriving in Elsberry about the Middle of August. Her brother, W. H. Baskett, in the meantime held both notes until she arrived from California when he gave her the mortgage note and offered her the Reid note. The latter she refused to accept. It seems that he previously offered to return it to Judge Reid and then to Gibson and they would not accept it. When he offered it to Gibson, Gibson, according to his own testimony, told him he did not want the note; that he did not have any business with it; that he did not understand how Judge Baskett had authority to give him Elizabeth Baskett's notes. Gibson knew at that time that the mortgage note had not been released of rec ord and W. H. Baskett had told him that Elizabeth would not give up the note. Told him that sometime between the middle of August and September first. It seems that Elizabeth Baskett never communicated directly with either Cannon or Gibson, but after her return home (she lived at a place called "Whiteside"

near Ellsberry, and had gone there), she wrote to her brother W. H. Baskett telling him to see a lawyer about the matter. This he did and also talked to Paul H. Gibson, the trustee, about advertising a sale under the deed of trust. The sale was being advertised to take place on October 31, 1908, when this injunction proceeding was begun and the sale was enjoined.

CAULFIELD, J. (after stating the facts).—We are unable to discovered any tenable ground on which to sustain this decree. Judge Baskett, as agent for his sister to receive payment of the note, had no authority to receive anything but money in liquidation of the debt. He had no authority to sell or exchange it or to accept the notes of another by way of payment of it. [Tiedeman, Commercial Paper, sec. 375; Mechem on Agency, sec. 375; 22 Am. & Eng. Ency. Law (2 Ed.,) p. 522; Smith v. Johnson, 71 Mo. 382.] Nor can her mere failure to communicate her repudiation directly to Gibson and Cannon be considered a ratification of her agent's unauthorized act. At the most she was merely silent as to those gentlemen. Now if ratification can be predicated on this mere fact of silence it must be either because it evidenced an intention on her part to ratify or because by it she has estopped herself to deny the authority. [St. Louis Gunning Adv. Co. v. Wanamaker, 115 Mo. App. 270, 90 S. W. 737.] For her to have intentionally ratified she must have voluntarily assumed, on full information, the unauthorized act. For her to be estopped, her silence must have led the parties dealt with to in some manner have altered their position for the worse. [Ib.] It needs no discussion to demonstrate that there was no intention on her part to ratify. As soon as she heard of the unauthorized act of her agent she repudiated it to him and directed him to get her money. She has steadfastly maintained this attitude of repudiation ever since and has received no benefits from

the unauthorized act. Her failure to directly communicate with Gibson and Cannon was more probably due to mere inexperience than anything else, or a profound conviction of the uselessness of such a proceeding as a means of obtaining any relief. It is equally plain that her silence did not lead any of the parties to alter their position for the worse. None of them did anything whatever to alter his position on the faith of her silence. They had made their trade and completed all their transactions a month before she had any hint of the transaction. She was not estopped by her silence.

But plaintiff argues in effect that by placing the note, endorsed in blank by the payee, in her agent's hands, and thus giving him the appearance of being the true owner of it with apparent authority to deal with it as he saw fit, she estopped herself to set up the true ownership against plaintiff, *who dealt with the agent on the faith of his being the true owner.* The language we have just italicized presents the vital part of this proposition of plaintiff in this case. Plaintiff must have dealt with W. H. Baskett on the faith of his being the true owner; and more, before he can invoke the doctrine of estoppel he must have been influenced by such false appearance of ownership to do some act or thing to his injury, which otherwise he would not have done. [Bank v. Burrus, 178 Mo. 716, 77 S. W. 748.] Plaintiff has utterly failed to prove any such thing. On the contrary it affirmatively appears from his own testimony in too clear a manner to be seriously disputed, that he was entirely content and fully intended to rely solely upon Gibson's obligation under his contract for a warranty deed to clear the land of the incumbrance. Upon any other theory his conduct is inexplicable. He turned over to Gibson the entire consideration for the conveyance before he knew whether Baskett would take Reid's notes or a cash payment and when for the first time he came

in contact with Baskett and had an opportunity to see the note he had already done everything under his contract with Gibson which could possibly be injurious to him, and then he would not take the trouble to look at the note and did not look at it, for the reason, as he very frankly testifies, that "the transaction had already been closed." It is clear that he relied upon Gibson entirely in the transaction, took no part in it and was not misled by anything Elizabeth Baskett did to any extent whatever.

Our conclusion upon the whole case is that the learned trial court committed error in granting the injunction. The judgment of the circuit court is reversed and the cause remanded with directions to vacate both the temporary and permanent injunction and to dismiss the case at the cost of the plaintiff, respondent here. *Reynolds, P. J.,* and *Nortoni, J.,* concur.