MILTON J. BACH, as Ancillary Committee of the Estate of WILLIAM NAGLE, an Incompetent, Appellant, *v.* JOHN NAGLE, Respondent.

Argued March 5, 1945; decided April 12, 1945.

*Selig Dresner* and *Milton J. Bach,* in person, for appellant. I. An interpretation which sanctions retention by the beneficiary of disability payments for his own use and not for the benefit of the insured results in an unfair advantage to the respondent, never intended by the insured or the insurance company. (*Donahue* v. *New York Life Ins. Co.,* 259 N. Y. 98; *Gray* v. *Prudential Insurance Co.,* 267 App. Div. 688, 268 App. Div. 755; *Wokal* v. *Belsky,* 53 App. Div. 167; *Cohen* v. *Hancock Mutual Life Ins. Co.,* 135 App. Div. 776; *Thompson* v. *Prudential Insurance Co.,* 119 App. Div. 666; *Ruoff* v. *John Hancock Mut. Life Ins. Co.,* 86 App. Div. 447; *Sinclair* v. *Purdy,* 235 N. Y. 245.) II. A trust in favor of the incompetent insured results from receipt of disability payments by the beneficiary. (*Wood* v. *Duff-Gordon,* 222 N. Y. 88; *Sinclair* v. *Purdy,* 235 N. Y. 245; Restatement, Trusts, ch. 12, vol. 2, pp. 1244–45; 3 Story on Equity, § 1663; *New York Trust Co.* v. *Black,* 178 App. Div. 4, 223 N. Y. 703; *Matter of Littman,* 165 Misc. 285; *Matter of Connolly,* 71 Misc. 388.)

*Louis W. Osterweis* for respondent. I. The construction given to the disability clause by the courts below, is proper and just, and carries out the obvious purpose which the insured intended to accomplish. (*Dunn* v. *New Amsterdam Casualty Co.,* 141 App. Div. 478; *McGrail* v. *Equitable Life Assurance Society of the U. S.,* 292 N. Y. 419; *Hewit Pharmacies, Inc.,* v. *Ætna*

*Life Ins. Co.,* 148 Misc. 663, 241 App. Div. 781, 267 N. Y. 31; *Houlihan* v. *Preferred Accident Ins. Co.,* 196 N. Y. 337; *Foulds* v. *New York Life Insurance Co.,* 256 App. Div. 834; *Tarasowski* v. *Prudential Insurance Co.,* 113 Misc. 248; *Howell* v. *John Hancock Mut. Life Ins. Co.,* 286 N. Y. 179.) II. A trust in favor of the incompetent does not result from the receipt of the disability payments by the beneficiary.

THACHER, J. This action was brought by the committee of an incompetent person against the incompetent's brother for a judgment declaring that disability benefits received and to be received by the brother, as the beneficiary named in a life and disability insurance policy issued to the incompetent, are for the use and benefit of the incompetent.

The policy in question was issued by the New York Life Insurance Company in 1923 for the face amount of five thousand dollars. The beneficiary designated at that time was Virginia K. Nagle, the wife of the insured, William Nagle. The policy provided that the insured might at any time and from time to time change the beneficiary and this he did on May 31, 1929, naming his brother, the defendant, John Nagle, who is now the designated beneficiary. This change was the voluntary act of the insured.

The policy contained the following disability provisions: " AND THE COMPANY AGREES TO PAY TO THE INSURED One per cent of the face of this policy ($10 per $1,000) each month during the lifetime of the insured and also to waive the payment of premiums, if the insured becomes wholly and permanently disabled before age 60, subject to all the terms and conditions contained in Section 1 hereof. \* \* \* 2. INCOME PAYMENTS. The Company will pay the Insured, or if such disability results from insanity will pay the beneficiary in lieu of the insured, a monthly income of one per cent of the face of the Policy during the lifetime of the Insured and the continuance of such disability."

After having designated his brother as the beneficiary, and before attaining the age of sixty, the insured became totally and permanently disabled by reason of insanity within the meaning of the policy, and in accordance with its terms the New York Life Insurance Company has paid to the defendant disability

benefits of fifty dollars a month since May, 1938. It is alleged that the incompetent's brother has used none of these payments for the benefit or in behalf of the insured except the sum of $270 and has retained the balance to his own use and benefit and intends to continue to use future monthly benefits to be received by him for his own use and benefit. The complaint contains the following conclusory allegations relating to the plaintiff's contention: "Seventeenth: Disability benefits due under the terms of the policy of insurance are for the sole use and benefit of the insured, and for the benefit of no other person Eighteenth: The defendant, John Nagle, has no interest in and to the disability benefits due under the policy, except the right conferred upon him to receive payments of disability benefits ' in lieu of the insured '."

Upon these allegations plaintiff demands judgment declaring that the disability benefits were received by the defendant for the use and benefit of the incompetent; that the defendant, by retaining benefits received by him in accordance with the terms of the policy of insurance, has become unjustly enriched, and that the defendant account for and pay over to the plaintiff benefits heretofore received or hereafter to be received.

There is nothing in the policy, or in any circumstances alleged, to support the conclusory allegations quoted above that the disability benefits due under the terms of the policy are for the sole use and benefit of the insured and that the defendant has no interest therein. There is no suggestion in the policy, nor any possible implication from any circumstances alleged, that these payments were intended for the use and benefit of the incompetent or that the defendant should be under any legal obligation so to use them. The payments directed in the policy are absolute and unqualified by any suggestion of a fiduciary relationship. Not even precatory words are used and the policy simply provides that such benefits, when disability arises from insanity, are to be paid to the beneficiary. Nor is any fiduciary relationship between the parties alleged in derogation of which it might be said that these benefits have been used. Indeed, if we assume — as we must — that the insured read the policy, it cannot be doubted that it was his purpose that the beneficiary should receive payment of the disability benefits without direction as to their use. Aside from the conclusory allegations

quoted above, there is not a word in the complaint even to suggest a basis for concluding that the insured did not intend to give his beneficiary full power to do as he pleased with the payments he has received and will receive.

We are constrained to conclude upon the bare allegations of this complaint that, although in some other setting circumstances might be imagined which could give rise to a trust affecting such payments, it is entirely clear that no such circumstances are here alleged and that the complaint was properly dismissed.

The judgment should be affirmed, without costs.

Conway, J. (dissenting). In 1923, William Nagle, then of sound mind, procured a policy of life insurance, with disability benefits, from the New York Life Insurance Company. At that time, he designated his wife as beneficiary. In 1929, he made his brother the beneficiary instead. In 1937, he was judicially declared to be mentally incompetent by a probate court in Ohio and a guardian of his property appointed.

The policy contained the following two provisions respecting disability benefits payable thereunder:

" AND THE COMPANY AGREES TO PAY TO THE INSURED One per cent of the face of this policy ($10 per $1,000) each month during the lifetime of the insured and also to waive the payment of premiums, if the insured becomes wholly and permanently disabled before age 60, subject to all the terms and conditions contained in Section 1 hereof "

" 2. INCOME PAYMENTS. The Company will pay the Insured, or if such disability results from insanity will pay the beneficiary in lieu of the Insured, a monthly income of one per cent of the face of the Policy during the lifetime of the Insured and the continuance of such disability."

The defendant brother of the incompetent has received, since May of 1938, the sum of $3,650 in monthly payments of $50 each from the insurance company, and will continue to receive those sums during the continuance of the existing disability of the insured. He has retained those sums for his own use and benefit, except for the sum of $270 expended for the incompetent, and purposes to continue to receive future monthly payments and to retain them for his own personal advantage. For that reason, upon the petition of the domiciliary guardian

in Ohio, the plaintiff in this action has been appointed ancillary committee of the estate of the incompetent in New York, and has brought this action to have it determined whether the disability benefits received and to be received were for the use and benefit of the incompetent, whether the defendant, by retaining the disability benefits already received by him, has become unjustly enriched and, if that be found to be so, that he be called upon to account for them and to pay them over to the ancillary committee.

We think it quite clear that under the allegations of the complaint, and they must be taken as true for the purpose of our decision, that a court of equity may impose either a resulting or a constructive trust upon the disability benefits received by the defendant.

The distinction between constructive and resulting trusts is well expressed in the Restatement of Restitution, section 160 b, as follows: " b. *Constructive trust and resulting trust.* A constructive trust is also to be distinguished from a resulting trust. A resulting trust arises where a transfer of property is made under circumstances which raise an inference that the person making the transfer or causing it to be made did not intend the transferee to have the beneficial interest in the property transferred. A constructive trust is imposed *not because of the intention of the parties* but because the person holding the title to property would profit by a wrong or would be unjustly enriched if he were permitted to keep the property." (Emphasis supplied.) (For similar definitions see Pomeroy, Equity Jurisprudence, Vol. 1, § 155; Bogert, Trusts and Trustees, § 451.)

It would seem clear from the facts surrounding the transaction here that the incompetent intended at the time he took out the insurance that the disability payments should be used for his own benefit, even if by reason of insanity he were unable to accept payments directly from the insurance company. The fact that there is no allegation of such intent in the complaint is not of moment. It may be presumed from the circumstances. The incompetent is now unable to tell what his intent was when he accepted the policy. The insurance company prepared the contract, and it seems fair to assume from the language of the policy, as we shall indicate presently, that it was to facilitate payment for the benefit of the one suffering the disability

without the loss of time which migh', occur if payments had to wait upon an application, by someone of unknown identity at the time the policy was written, for the appointment of a committee of the property of the incompetent. It was to enable the disabled one to have aid and care promptly. In any event, a court may readily determine the incompetent's intention from the internal evidence disclosed in the contract of insurance. We must presume that when he accepted the policy he was of sound mind and that the contract into which he had entered was the result of the reasoning of a normal mind. He was protecting his beneficiary by life insurance for which he agreed to pay premiums, but was providing an income for himself in the event of total disability, and paying an extra premium for that. He agreed with the company that in the event of disability it would pay him a monthly income, but that, if the disability came about because of insanity, it would pay the beneficiary " in lieu of the insured " the monthly income. Since the policyholder was then sane, a court should have no difficulty in determining that the insured intended that the money was to be used for his own care and protection. To determine otherwise would require a finding that the insured intended that if he were sane and disabled he should have an income, but that if he became insane he should be thrown upon the community without income while the payments by the insurance company, for which he had paid through the years, should go to support someone else. The very wording of the clause itself gives rise to the interpretation that a trust relationship was intended. It provided that: " The Company will pay the Insured, or if such disability results from insanity will pay the beneficiary *in lieu of the insured,* a monthly income * * * " (emphasis supplied). The words " in lieu of " mean " in place of " (lieu is derived from the latin, locus; 21 Words and Phrases, p. 473). While no cases have been found involving similar facts, reasonable interpretation here requires that we hold that someone standing " in the place of " the incompetent means someone taking his place for his benefit. Thus we give a meaning to all of the words in the sentence. The holding below it seems to us gives a construction which makes the applicable portion of the sentence read instead: " * * * or if such disability results from insanity, will pay the beneficiary, a monthly income."

We think the circumstances of this case come well within the definition of resulting trust, again from the Restatement (Restatement of Trusts, Vol. 2, ch. 12, pp. 1244–5) as follows: " A resulting trust arises where a person makes or causes to be made a disposition of property under circumstances which raise an inference that he does not intend that the person taking or holding the property should have the beneficial interest therein and where the inference is not rebutted and the beneficial interest is not otherwise effectively disposed of. Since the person who holds the property is not entitled to the beneficial interest, and since the beneficial interest is not otherwise disposed of, it springs back or results to the person who made the disposition or to his estate, and the person holding the property holds it upon a resulting trust for him or his estate."

Even if it be thought that the inference discussed be not a permissible one, certainly equity may impose a constructive trust upon the moneys received by the defendant. The disabled incompetent and the benfieciary defendant are brothers. That without more, and there is no answer interposed, under the circumstances presented here, is sufficient to " set a court of equity in motion ". The general principle was well delineated in the dissenting opinion in *Fraw Realty Co.* v. *Natanson* (261 N. Y. 396, 412) : " Ordinarily men do not trust their property to strangers without at least requiring some evidence that the stranger is holding for them. Where there is blind trust there is usually a prior existing relationship which explains the confidence; but wherever under cover of a relationship of confidence, however created, there has been enrichment of one party, a court of equity should interpose its powers to remedy the wrong. Myriad are the circumstances which may give rise to such relationship. The parties may be united by blood, family affection, close friendship or business relations. Reputation and standing in the community may provide the element of confidence which might otherwise not be found in previous personal relations. However the relationship may have arisen, where a party accepts property knowing that it is intrusted to him because of the confidence which another places in him, there is a relationship of confidence, abuse of which should not be tolerated by a court of equity."

The defendant has been unjustly enriched and it is unconscionable for him to retain the payments for his own use. In *Beatty v. Guggenheim Exploration Co.* (CARDOZO, J., 225 N. Y. 380, 386) we said: "A constructive trust is the formula through which the conscience of equity finds expression." A similar statement, to be found in Story, Equity Jurisprudence, Volume 3, section 1663, is: "One of the most common cases in which a Court of Equity acts upon the ground of implied trusts in invitum is where a party has received money which he cannot conscientiously withhold from another party." We think this is clearly such a case.

The judgment should be reversed, with costs and the motion to dismiss the complaint denied.

LEHMAN, Ch. J., LOUGHRAN, LEWIS and DESMOND, JJ., concur with THACHER, J.; CONWAY, J., dissents in opinion in which DYE, J., concurs.

Judgment affirmed.