Matthew M. Levy, J.
On August 13, 1926, when at the age of 18 and gainfully employed, David Samiter applied for and obtained an endowment policy of life insurance in the face amount of $2,000, issued by the New York Life Insurance Company. He named his mother (then 43 years of age) as the beneficiary, reserving unto himself the right to change the beneficiary. The policy contained a rider which required the company to make a $20 monthly payment in the event of the assured’s total and permanent disability before the age of 60 (increasing to $40 a month after 10 years of continuous disability) and which provided also for the waiver of premiums. The relevant portions of the disability clause read as follows:
“New York Life Insurance Company agrees to pay to the insured a monthly income [as specified] * * * upon receipt of due proof that the Insured is totally and presumably permanently disabled * * *
“ The Company will pay to the Insured the monthly income stated above for each completed month from the commencement of and during the period of continuous total disability * * * If disability results from insanity, payment will be made to the beneficiary in lieu of the Insured ’ ’.
In 1932, David Samiter (also known as David Byne and David Same ter) was duly adjudged incompetent and was thereafter committed to Pilgrim State Hospital, where he has been a patient ever since. At the time of his admission to the hospital the insurance policy referred to was in force, and there is no dispute that he has been and is “ totally and presumably permanently disabled ”, and that his “ disability results from insanity ”, within the meaning of the policy. Accordingly, in compliance with the provisions of the policy, the insurance company made monthly payments to Bessie Samiter, the mother of the insured and the beneficiary named in the policy. There *419 after, and in 1943, Mrs. Samiter herself became incompetent and was committed to the same hospital where David was and is a patient.
The committee for the son is (pursuant to due appointment) likewise acting as committee for the mother. Upon the appointment of the latter committee, the insurance company has been making the disability payments to him as the committee of the mother. These payments have been used to meet the hospital maintenance charges for the mother. On August 13, 1946, the endowment policy matured and the committee of the incompetent son received the principal proceeds therefrom and has been using this fund to pay the maintenance charges of the son at the hospital. All that now remains to the policy — as a matter of finances — are the monthly disability benefits of $40 being paid by the company to the committee of the mother. The committee for the son and for the mother being the same person, the committee poses the question for the determination of the court as to whether these disability payments should be made to him as committee of the insured or to him as the committee of the beneficiary.
The committee asserts that, from a practical standpoint, there is no difference at this time who gets the payments — that if the committee for the mother receives them there will be funds with which to pay the mother’s maintenance charges at the hospital and there will be no means with which to pay the son’s maintenance charges; on the other hand, if the committee for the son receives the payments, there will be means to pay the son’s maintenance charges at the same hospital, but not the mother’s. In other words, says the committee, either the mother’s or the son’s expenses for hospital care will be unpaid, depending upon which committee receives the disability proceeds from the policy.
At my request, the Attorney-General, as public counsel for the respective incompetents and as attorney for the Pilgrim State Hospital, was asked to express his views. In response to my inquiry, the Attorney-General pointed out that there is a practical difference — which the committee seems to have overlooked — and that is of a twofold nature: (1) There are some additional funds in the hands of the son’s committee with which to pay the hospital charges. The Attorney-General therefore asks that the committee’s motion be denied so that the disability payments be continued to be made to the committee of the mother as beneficiary — and thus the committee of each incompetent will have funds with which to pay for his and her. respective hospital custody. (2) It also appears that *420 the mother, who was admitted to Pilgrim State Hospital in 1943, is now 73 years of age, has an arteriosclerotic heart and is but in fair physical condition; on the other hand, the son, who was admitted to Pilgrim in 1934, is now but 49 years of age and is in good physical condition. In the circumstances, there is every probability that the insured will survive the beneficiary. And, says the Attorney-General, if the mother is — because of the son’s insanity — declared to be irrevocably entitled to the disability proceeds of the policy (by requiring payments to the mother’s committee), the insurance company’s liability on the policy may be held to cease on the mother’s probable earlier demise, notwithstanding the son’s likely continued disability for many years to come.
As I see it, however, the question before me is not what is or is not practical in the light of what may be — years after the issuance of the policy — the respective health and economic conditions, and the likely longevity, of the assured and the beneficiary. The issue is: What is the meaning of the policy provision that, “ [i]f disability results from insanity, payment will be made to the beneficiary in lieu of the Insured ”?
I am urged to determine the issue by seeking to ascertain what the parties intended. I suppose that I should (as suggested by counsel) presume to delve into the recesses of the mind of the assured when he applied for and accepted the policy with the provision under scrutiny, worded and printed thereon as it was — since the policy is but an agreement between the parties — that is, a contractual meeting of the minds of the parties involved. My difficulty is that if I am to seek actual desires — as distinguished from presumed expectations on the basis of a reading of the actual contractual expressions — I must confess that the thoughts of this assured on this issue are now, naturally enough, quite inarticulate. Perhaps I might assume to draw an inference on the basis of what I myself think the average assured would ordinarily have wanted and assumed he provided for — if he had thought about it at all.
Was it intended to, or does it, effectuate a definitive change in the legal right to demand and collect the disability payments, to say that, “ [i]f disability results from insanity, payment will be made to the beneficiary in lieu of the Insured”? I should have thought not. As I read this language, that right is always in the assured, and the making of periodic payments to the beneficiary in lieu of the insured is an arrangement merely for the convenience of the company and the insured, in the event of the assured’s insanity. That this is but a facility — rather than a novation — is emphasized when we *421 recognize that the beneficiary named in the policy may be changed at will by the assured, or (as I think) by his duly constituted representative. I should have supposed that the assured wanted and arranged for the disability benefits for himself and not for his beneficiary, and that the assured (being at the time an average and reasonable person) wanted and intended that the disability benefits which he would be entitled to receive under the policy would be used for himself, when he most needed financial aid. Accordingly, in-the event he were disabled physically, he arranged to receive the disability benefits directly; and, being of sound mind, he would use the policy proceeds for himself; but, if he were disabled mentally, it were better, and he so arranged, to have the payments made to his chosen beneficiary — not for the latter’s personal use — but, as one who would naturally be interested in utilizing the proceeds to help his benefactor, the assured, and as one who could be relied upon and perhaps compelled to do so.
But the insurance company cites Bach v. Nagle (294 N. Y. 151) and Foulds v. New York Life Ins. Co. (256 App. Div. 834). In the Bach case, by a divided bench, the Court of Appeals held that moneys paid to the beneficiary under a clause similar to the one here involved belong to the beneficiary to do with as he sees fit, and that, on the bare allegations of the complaint in that case, the committee for an incompetent insured was not entitled to impose a trust upon the disability benefits received by the beneficiary. In the Foulds case, the committee of the incompetent-insured, by way of an action for a declaratory judgment, challenged the right of the beneficiaries designated in the policy to receive the disability income payments. The court decided in favor of the named beneficiaries, saying: “ The above quoted clause is free from ambiguity and under the guise of construction its meaning cannot be changed. Since there is nothing in the Insurance Law pertaining to life insurance policies which proscribes the aforesaid provision, its validity must be upheld.” (Foulds v. New York Life Ins. Co., N. Y. L. J., March 29, 1938, p. 1524, col. 4, affd. without opinion 256 App. Div. 834; motion for leave to appeal denied 256 App. Div. 930.)
Whether or not the company’s payment to the beneficiary— even over the objection of the assured’s committee — would discharge the company’s obligations under the policy was not involved in either the Bach or Foulds cases. Nor is that involved in the case at bar. As between the assured and the beneficiary, the cited precedents are, certainly in their essence, contrary to the reasoning in which I have permitted myself to indulge as an original proposition. And I must therefore *422 conclude that, in an ordinary case, the beneficiary would be entitled to demand, collect and keep the disability payments.
It does not follow, however, as suggested by the insurance company, that in the existing situation, the moneys are required, under the terms of the policy, to be paid to the committee of the beneficiary, also now adjudicated incompetent. For, although the insured selected a specified beneficiary to whom the “ payment will be made * * * in lieu of the Insured ”, in case the assured became insane, the insured did not name the committee of the beneficiary to be the mandatory recipient in lieu of the beneficiary in case the beneficiary herself became incompetent. In neither Bach nor Foulds, was the court concerned with a situation where the beneficiary named in the policy had himself become incompetent. The language of the clause is plain, at least insofar as its applicability to the present facts are concerned. It is quite obvious to me that, while there is contractual provision in case the assured becomes insane, there is none in case his beneficiary also becomes insane. It seems to me that neither of the contracting parties — the company no less than the assured — thought about the likelihood of the joint happening of disability by reason of insanity of both assured and beneficiary. And, not having thought about it, they did not contractually provide against such a contingency. I hold that there is here a failure of designation of the party who would, as a matter of law, be entitled to take, and, in consequence, the proceeds of the policy belong to the estate of the insured — that is, the committee of the incompetent-insured.
I have come to the conclusion, therefore, from any point of view, that the disability payments should (from now on) be made to the committee of the insured. Settle order accordingly. Since the committee, in asking for the instructions of the court, is acting here both for the insured and for the beneficiary, his appearance in both such capacities on this application is noted • — -as requested by the insurance company. Insofar as compensation is now sought by the committee, either as such or as attorney, the right is reserved to him to make due application therefor in one estate or the other.