FRAW REALTY CO., INC., Appellant, *v.* MAX N. NATANSON et al., Respondents.

(Argued January 23, 1933; decided April 11, 1933.)

*Eugene A. Sherpick, William Gilbert, James J. Regan* and *John W. Jordan* for appellant. The judgment should be reversed and judgment directed for the plaintiff for the relief demanded in its complaint. (*Natelson* v. *A. B. L. Holding Co.*, 260 N. Y. 233.)

*Samuel Seabury* and *Alexander Pfeiffer* for respondents. In the absence of an estoppel, a creditor is entitled to collect his claim only out of property belonging to his debtor. Consequently, in such a case, a debtor commits no wrong against his creditor by transferring into the name of its true owner, property theretofore standing in the name of the debtor but, in truth, never belonging to the debtor. (*Siemon* v. *Austin*, 33 Barb. 9; 29 N. Y. 598; *Frank* v. *Linkop Realty Corp.*, 106 N. J. Eq. 567; *Trenton Banking Co.* v. *Duncan*, 86 N. Y. 221; *Holden* v. *Burnham*, 2 Hun, 678; *Dunn* v. *Whalen*, 21 N. Y. Supp. 869; *Davis* v. *Graves*, 29 Barb. 480; *Foote* v. *Bryant*, 47 N. Y. 544; *Norton* v. *Mallory*, 63 N. Y. 434; *Robbins* v. *Robbins*, 89 N. Y. 251; *Furer* v. *Real Estate Corp.*, 108 N. J. Eq. 221; *Kingsbury* v. *Christy*, 21 Ariz. 559; *Bicocchi* v. *Casey-Swasey Co.*, 91 Tex. 259.) All the properties, transfers of which are now attacked, were purchased by Normar, and held in the name of Malex, pursuant to an agreement between Normar and Malex that Normar would pay for the properties, manage them, and pay all the carrying and operating expenses; the real, beneficial and full equitable ownership thereof would be in Normar and Malex would convey to Normar whenever requested by Normar. In these circumstances, Normar was at all times the beneficial owner of the properties and, unless there was some estoppel in plaintiff's favor which would make it inequitable for Malex to put the properties into the name of their true owner, there was not only no wrong to plaintiff in the transfers from Malex to Normar, but there would be a great wrong to Normar in subjecting its property to the payment of a debt of Malex. (*Foreman* v. *Foreman*, 251 N. Y. 237; *Croker* v. *N. Y. Trust Co.*, 245 N. Y. 17; *Kittredge* v. *Grannis*, 244 N. Y. 168; *Holden* v. *Burnham*, 5 T. & C. 195; 63 N. Y. 74; *Dunn* v. *Whalen*, 21 N. Y. Supp. 869; *Siemon* v. *Austin*, 33 Barb. 9; 29 N. Y. 598; *Lugar* v. *Lugar*, 160 App. Div. 807;

*Ocean Nat. Bank* v. *Hodges,* 9 Hun, 161; *Frank* v. *Linkop Realty Corp.,* 106 N. J. Eq. 567; *Bicocchi* v. *Casey-Swasey Co.,* 91 Tex. 259; *Kingsbury* v. *Christy,* 21 Ariz. 559; *Trenton Banking Co.* v. *Duncan,* 86 N. Y. 221; *Furer* v. *Real Estate Corp.,* 108 N. J. Eq. 221; *Davis* v. *Graves,* 29 Barb. 480; *Foote* v. *Bryant,* 47 N. Y. 544; *Norton* v. *Mallory,* 63 N. Y. 434; *Robbins* v. *Robbins,* 89 N. Y. 251.)

KELLOGG, J. Max Natanson and his brother, Alexander Natanson, were the sole stockholders of the defendants Normar Real Estate Corporation and Malex Realty Corporation, the former owning seventy-five per cent of the stock in each corporation and the latter twenty-five per cent. Max was the president of each corporation, and Alexander was the treasurer. In February, 1928, the Natansons procured the purchase of a parcel of land from 875 West End Avenue Corporation. Normar corporation made a down payment of $89,000 for the property. Title was conveyed to Malex corporation, which· executed and delivered to West End Avenue corporation a bond for $83,833.30, the balance of the stipulated purchase price, together with a mortgage upon the parcel purchased to secure the payment of the bond. The bond and mortgage were subsequently transferred to the plaintiff. After the execution of these instruments, many other parcels of real estate were caused to be purchased. The down payments were in all cases made by Normar corporation; title was in all cases conveyed to Malex corporation; in all cases where purchase-money mortgages were given, Malex executed them. In May, 1929, Malex made default upon the bond and mortgage assigned to the plaintiff. Foreclosure, begun shortly thereafter, on May 26, 1930, resulted in a deficiency judgment of $86,752.69 in favor of the plaintiff against Malex. Meanwhile, in the months of October and November, 1929, Malex had conveyed to Normar, or its

designees, all the real estate and other properties, conveyed to Malex after the execution by it of the mortgage held by the plaintiff, together with all other assets which it possessed. Learning of the fact, the plaintiff brought this action to set aside the conveyances so made, on the ground that they were made in fraud of creditors and particularly of the plaintiff. The defendants, the transferees, admit, as does Malex, that all the transfers were made without consideration paid therefor, and that the transfers stripped Malex of all its assets. The defense is that Normar was the real owner of the properties; that Malex held the legal title for its benefit; that the conveyances operated merely to convey to the true owner, or its designees, the naked legal title.

Admittedly there was never any writing between Normar and Malex that the latter should hold title for the former; never any resolution to that effect adopted by either corporation. Admittedly, on the various occasions when the properties were purchased, there was not then any declaration, either written or oral, that Malex would hold title for the benefit of Normar. The Natansons testified that there was merely a general understanding or arrangement between the two, arrived at on some occasion not stated, that Normar would make the down payments upon all purchases, and that Malex would take title, for the benefit of Normar, delivering to the sellers all necessary purchase money bonds and mortgages. They say that Malex was " to hold the record title to property " for Normar; that Malex was to " act as a dummy " for Normar. The object to be achieved was that the Natansons might use " the Malex for the purpose of the delivery of the purchase money bond and mortgage." Granted the existence of the general understanding Malex would still have held legal title to the properties purchased, even though it had been intended that Malex should play the passive role of a so-called " dummy "

for Normar. The legal title would have constituted a full and complete title, unless, by the words and conduct of the parties, some equitable estate, or trust had been raised. There could have been no express trust, for declarations of trust are ineffective to create such an estate unless the declarations are in writing. (Real Prop. Law; Cons. Laws, ch. 50, § 242.) There could have been no resulting trust, arising from the fact that Normar paid the purchase money and Malex took the title, for all such trusts have been abolished. (Real Prop. Law, § 94.) Unless, therefore, the facts were such, that a constructive trust would have been raised by a court of equity, Malex was the sole owner, in law and in equity, of all the properties conveyed.

The principle governing the erection by a court of equity of a constructive trust in cases of a similar character has been recently stated in *Foreman* v. *Foreman* (251 N. Y. 237, 240), to be as follows: " The rule is now settled by repeated judgments of this court that the statute does not obstruct the recognition of a constructive trust affecting an interest in land where a confidential relation would. be abused if there were repudiation, without redress, of a trust orally declared." As authority for the principle enunciated the court cited *Sinclair* v. *Purdy* (235 N. Y. 245, 253); *Gallagher* v. *Gallagher* (135 App. Div. 457; 202 N. Y. 572); *Leary* v. *Corvin* (181 N. Y. 222, 229); *Goldsmith* v. *Goldsmith* (145 N. Y. 313); *Wood* v. *Rabe* (96 N. Y. 414). It also quoted the following statement from *Sinclair* v. *Purdy* (*supra*): " It is not the promise only, nor the breach only, but unjust enrichment under cover of the relation of confidence, which puts the court in motion." The confidential relation, referred to in *Foreman* v. *Foreman* and *Sinclair* v. *Purdy*, self-evidently is not the relationship which is newly created by the transaction involving the conveyance and the promise, for so to hold would mean that in every case a trust may

be created by an oral declaration. Clearly the references are to a preexisting relationship of confidence such as that obtaining between husband and wife, father and son, brother and sister, or otherwise. This appears from the fact that in each of the cases cited by the court such a relationship existed, as well as from the language of the opinions written therein. Thus, in the leading case of *Wood* v. *Rabe* (*supra*), which involved the promise of a mother to take title to property in her name for the benefit of a son, if he performed an act requested by her, it was held that an enforceable trust arose. The court said: " It was a transaction between parent and child, a relation which, if not fiduciary in the strict sense, was nevertheless one ordinarily involving the greatest confidence on one side, and the greatest influence on the other." Again, it was said: " It was on the part of the son the case of a confidence induced, not by the bare promise of another, but by the promise and the confidential relation conjoined. The confidence in fact, had its spring and origin in the relation, and that relation was a controlling ingredient moving his action " (p. 426). In *Goldsmith* v. *Goldsmith* (*supra*) it was said: " Upon the whole transaction, therefore, including the confidential relation of the parties and its nature as a family arrangement very much beyond a mere business relation, we think it was competent for a court of equity to impress upon the property and its proceeds an implied trust for the benefit of the children " (p. 318).

We disclaim any purpose of holding that the requisite confidential relationship must be one found within the confines of a family. We conceive that it might exist between lawyer and client, doctor and patient, priest and parishioner, and many other sets of persons, between whom there are bonds of intimacy and trust. Suffice it to say that we find no such relationship existing between Normar corporation and Malex corporation. Surely,

if a court of equity had refused to carry out the arrangement made between the two Natansons, no "unjust enrichment under cover of the relation of confidence" could have resulted. On the contrary, recognition and enforcement of the arrangement, might have produced, rather than have prevented, an unjust enrichment. In that event, the Natansons personally would have escaped the payment of a purchase money bond because shielded from liability by the two corporations; Normar would have escaped, although posing as the principal actor in the transaction, because it did not sign and seal the bond; Malex would have escaped payment because it had no property with which to pay. Thus, through the aid of a court of equity, the fruits of a contract of sale would have been secured to Normar, notwithstanding the fact that the promises to pay therefor had been repudiated or rendered worthless. It is not thinkable that a constructive trust would have been raised by the court to accomplish an end so unjust.

In *Foreman* v. *Foreman* (*supra*) the facts considered were these: A husband caused a conveyance of land for which he had paid, to be taken in the name of his wife, upon her promise to convey to him upon demand. "After the purchase had been made, he collected the rents and used them as his own. He paid the taxes, the insurance premiums, the interest on the mortgages, and the cost of improvements and repairs. The dominion that goes with ownership was continuously his." In holding that the wife held in trust for the husband, it was said by the court: "In its origin the trust was dependent for proof of its existence on nothing better than word of mouth. In the end, at her death, what was oral in its beginnings, had been confirmed by part performance, with the result that conduct as well as words had become the signs of its creation" (p. 241).

It is asserted here that Normar acted toward Malex
as the husband acted toward the wife in the case cited;
that it collected all the rents payable to Malex; that it
used them as its own; that it paid all the costs of mainte-
nance; that, as in the case cited, the existence of the trust,
the proof of which originally rested merely in an under-
standing between the Natansons, was established by the
subsequent conduct of the parties. There is a wide
difference between the two cases. In the one an individual,
the husband, exercised the dominion which goes with
ownership; an individual, the wife, who was the legal
owner acquiesced therein, thereby admitting the owner-
ship of her husband. These persons had unlimited power
to do as they pleased with their own. Here we are dealing
with corporations having only those powers which their
certificates of incorporation conferred. The certificates
are not in evidence, so that we cannot know that Malex
was ever given power merely to hold for another the naked
title to real estate. We must presume that Malex and
Normar were authorized as separate legal entities to
conduct business wholly on behalf of their respective
stockholders and creditors, quite independently of one
another; that the officers of each were trustees of the assets
of each for the stockholders and creditors of each; that
neither was authorized to obtrude itself into the affairs
of the other; that neither could legally appropriate to
itself the assets of the other. Yet, says Normar, we were
the operating concern and Malex was merely our
" dummy." True, Normar did treat Malex as if it were
a mere shell, nothing more than a title holder or " dummy "
for itself. Thus it seized for itself all the rentals payable
to Malex, amounting in one year to more than $85,000.
We cannot perceive, however, that the seizure was lawful,
or other than an illegal diversion of funds. True, the
Natansons were the sole stockholders in both corporations,
but they were not the sole parties interested. Malex,

at the time, was heavily indebted upon purchase money bonds, in the instance of this plaintiff upon a bond which finally produced a deficiency judgment for more than $80,000. Under the circumstances, surely Normar had no right to appropriate the rentals. Yet, upon that appropriation it builds its claim that Malex was its dummy, and that Malex, having permitted Normar so to treat it, thereby acknowledged that it held the properties acquired in trust for Normar. We were not aware that the use of the epithet " dummy " could have so magical an effect.

" Metaphors in law are to be narrowly watched, for starting as devices to liberate thought, they end often by enslaving it. We say at times that the corporate entity will be ignored when the parent corporation operates a business through a subsidiary which is characterized as an ' alias ' or a ' dummy.' All this is well enough if the picturesqueness of the epithets does not lead us to forget that the essential term to be defined is the act of operation." (Per CARDOZO, J., in *Berkey* v. *Third Avenue Ry.* Co., 244 N. Y. 84, 94, 95.) In that case a passenger was injured while stepping from a trolley car which the Forty-second Street Railway Corporation alone had the franchise to operate. The defendant, the Third Avenue Railway Company, owned all the stock of the Forty-second Street corporation, and otherwise acted, in some manner, to indicate that it, not the Forty-second Street corporation, was the real operator of the cars upon the latter's line. In that case, further than as quoted, CARDOZO, J., said: " The logical consistency of a juridical conception will indeed be sacrificed at times when the sacrifice is essential to the end that some accepted public policy may be defended or upheld." In *Jenkins* v. *Moyse* (254 N. Y. 319, 324) it was said by LEHMAN, J.: " The corporate entity may be disregarded where it is used as a cloak or cover for fraud or illegality. For that

there is ample authority." In these and other cases the corporate form was sought to be disregarded in order that fraudulent acts might be set aside or genuine wrongdoers reached and punished. The effort here is of quite a contrary nature. Those who created a corporation seek, not to insist upon the reality of the corporate form, but to have it ignored, so that the character of a " dummy " or subsidiary for another corporation may be fastened upon it, to the end that the corporators may correspondingly profit. We cannot see that here to ignore the corporate form will promote " some accepted public policy," remove a " cloak or cover for fraud," or otherwise further the interests of justice.

In *Jackson* v. *Hooper* (76 N. J. Eq. 592) it was said by DILL, J., that the Courts of Chancery of the State of New Jersey would never tolerate the doctrine that by " agreement or course of dealing" corporations might become merely " agencies or instrumentalities, or forms in the conduct of a copartnership or joint business;" that the law never contemplated that persons engaged in business as partners may incorporate " with intent to obtain the advantages and immunities of a corporate form and then Proteus-like, become at will a copartnership or a corporation, as the exigencies or purposes of their joint enterprise may from time to time require;" that, on grounds of public policy " the doctrine contended for cannot be tolerated as it renders nugatory and void the authority of the legislature — a co-ordinate branch of the government — established by the constitution in respect to the creation, supervision and winding up of corporations." The case has been cited by this court in *Brock* v. *Poor* (216 N. Y. 387).

Upon facts almost identical with those found here we held in *Natelson* v. *A. B. L. Holding Co.* (260 N. Y. 233) that no trust arose to justify a conveyance from a

corporation to its stockholders. That decision calls for a similar decision here.

The judgments should be reversed, and judgment directed for the plaintiff for the relief asked for in the complaint, with costs in all courts.

LEHMAN, J. (dissenting). The plaintiff has recovered a deficiency judgment in a foreclosure action brought against the defendant Malex Realty Corporation. An execution issued on such judgment has been returned wholly unsatisfied. Malex Realty Corporation prior to the entry of said judgment had conveyed to the defendant Normar Real Estate Corporation several parcels of real property. In this action the plaintiff seeks to set aside these conveyances on the ground that they " were made without consideration and with the purpose and intent of hindering, delaying and defrauding the plaintiff and the other creditors of the said Malex Realty Corporation and with intent to cheat and defraud the plaintiff and prevent it from realising upon and collecting the moneys owed to it by the defendant Malex Realty Corporation." A judgment dismissing the complaint has been unanimously affirmed by the Appellate Division.

As Judge KELLOGG points out in his opinion, Malex Realty Corporation had made no payments out of its own money or property for any of the real property which it has conveyed to the Normar Real Estate Corporation. Such payments were in all cases made by Normar Corporation. But where purchase money bonds and mortgages were given as part consideration, these mortgages were in all cases signed, sealed and delivered by Malex, and it is the only party which can be held liable upon these bonds. (*Crowley* v. *Lewis*, 239 N. Y. 264.)

Max Natanson and his brother, Alexander Natanson, were the sole stockholders, both of Malex Realty Corporation and of Normar Real Estate Corporation. They

managed the affairs of both corporations. They are the only persons who could eventually derive profit from successful business transactions conducted by these corporations, but they would not be personally liable for losses sustained by the corporation. The corporate entity may be disregarded where it is used as a cloak or cover for fraud or illegality, but the stockholders may create or use the corporation for the purpose of limiting their liability. Such use is not fraudulent or unlawful. Indeed, corporations are created and endowed by the State with an existence of their own largely for such use. They are not mere agencies or instrumentalities in the conduct of the copartnership or joint venture, and their stockholders may not in disregard of the corporate entity appropriate the property of the corporation on the claim that the title to such property was in the corporation merely as agent for them. We applied that rule in *Natelson* v. *A. B. L. Holding Co.* (260 N. Y. 233, 239.) It seems to me that it has no application here.

In that case the stockholders had furnished the corporation with the money which it used in its real estate ventures, and when the corporation was threatened with insolvency, the stockholders caused the corporation to transfer the property purchased with these funds to themselves. Though there was a finding that the corporation was organized by its stockholders for the purpose of holding, as their agent, the record title of real property purchased and paid for by them, we said: " there is no evidence that it did act as agent beyond the insufficient fact that all the money used in its business over and above its capital of $5,000 was furnished by Lilienstern and Beringer [its stockholders] in proportion to their stock holdings," and even those moneys were treated by the corporation as part of its general capital. Thus the claim of the stockholders that the real property purchased by the corporation was held by the corpora-

tion solely as their agent rested wholly upon the stockholders' disregard of the corporate entity when it suited their interests to disregard it.

In the present case the stockholders created two separate corporations. They controlled both, but each corporation was an entity separate from its stockholders, and separate from any other corporation controlled by the same stockholders. Normar Real Estate Corporation did not use its moneys for the business of Malex Realty Corporation. It could not do so lawfully without a disregard of the corporate entity, which the law does not permit, and if it had attempted to do so its creditors might properly have insisted upon the rescission of the transaction. It was not even a stockholder of Malex. The moneys paid for the purchase of the real estate taken in the name of the Malex Realty Corporation were entered in Normar's books. So, too, the properties purchased were entered in Normar's books as Normar's property. The rents when received were paid into Normar's treasury and were reflected in Normar's income tax reports. From the outset Malex held only the naked title to the property. As between it and Normar, Normar received all benefits accruing from the property. It may be that Malex was not endowed with corporate power to act as Normar's agent. It did do so in fact, and its officers and stockholders so intended. So, too, the same individuals, who happened to be the sole officers and stockholders of Normar, must, of course, have intended when Normar made payments upon such purchases. It is said that this constituted a fraud on the creditors of Malex and especially upon this plaintiff who received the purchase-money bond of Malex when its property was conveyed to Malex. Doubtless Normar used Malex as its agent to take the title to the property in order that liability on purchase-money bonds might not be fastened upon it. It could have done so lawfully by using an individual instead of a

corporation as its agent. (*Crowley* v. *Lewis*, *supra.*) We know that it is a common practice in real estate transactions to use dummies or agents for such purpose. Such practice, however common, is fraudulent if the financial solvency of the dummy or agent is misrepresented and from such misrepresentation an estoppel may arise. (*Natelson* v. *A. B. L. Holding Co.*, *supra.*) Here there was no such misrepresentation, and it is not disputed that the plaintiff in accepting the bond of Malex did not rely upon the fact that Malex held the record title to other real property; nor does it appear that any other creditor extended credit to Malex upon an appearance of solvency of Malex, or relied upon information that Malex held title to a number of parcels of real property. The claim of Normar that the properties are held by Malex merely as its agent or dummy rests upon no disregard of the separate corporate entity of Malex. Indeed, the basis of that claim is that Malex is a separate entity whose position is the same as if it were an individual agent instead of a corporate entity.

If Malex had corporate power to hold real property as agent for another, then there could be no doubt that property so held would not belong to it but to its principal. (Cf. *Bing* v. *People*, 254 N. Y. 484.) If Malex did not have such corporate powers, then its act in taking such title would be *ultra vires;* that would not place this plaintiff in a better position than it is now, for the plaintiff is asserting that Malex should retain the benefit of its *ultra vires* act without being held to the promise upon which such benefit was obtained.

So far I have assumed that such promise was in fact made. In truth no such promise was expressly given by Malex either orally or in writing. It could hardly have been made orally by the officers acting for Malex to the officers acting for Normar, since the officers were identical, and men, whether acting as principals or agents, do not

make oral promises to themselves. Words are used to convey intention from one person to the other. When a person acts in dual capacity no words are needed to convey intention. In such case intention is shown by acts rather than words, and words are used only for the purpose of creating evidence of intention. Here the acts of Malex and Normar are strong evidence of an intention which the triers of the fact have embodied in a finding which we may not disturb. When Malex conveyed the property held in its name to Normar, it was merely carrying out that intention. If the officers of the two corporations, though identical, had executed a written agreement that all property for which Normar furnished the cash consideration should be held by Malex, solely for the benefit of Normar, could it be doubted that the law would hold Malex to its promise? In that case a transfer of title by Malex to Normar would not have deprived the creditors of Malex of any right to have the property of Malex applied to the payment of the debts of Malex, for Malex would never have held more than naked title to the property. Now, unless we disregard the corporate entity, Malex has done exactly what fair dealing and ordinary honesty should have dictated it to do.

The only question that remains is whether in the absence of a written instrument, we are precluded from recognizing the existence of a trust. (Real Prop. Law, § 242.) If Normar were appearing as a suitor in this court, asking that Malex be compelled to convey to it the property to which Malex holds title, the courts would be powerless to act, unless repudiation of Normar's claim to the property constitutes an abuse of a confidential relation between Malex and Normar, and would result in unjust enrichment of Malex under cover of such relation of confidence. That rule is well established by our decisions, but we have never attempted to limit or define the nature of the confidential relationship which may set a court of equity

in motion. Perhaps no such definition can be formulated which would cover all cases. Ordinarily men do not trust their property to strangers without at least requiring some evidence that the stranger is holding for them. Where there is blind trust there is usually a prior existing relationship which explains the confidence; but wherever under cover of a relationship of confidence, however created, there has been enrichment of one party, a court of equity should interpose its powers to remedy the wrong. Myriad are the circumstances which may give rise to such relationship. The parties may be united by blood, family affection, close friendship or business relations. Reputation and standing in the community may provide the element of confidence which might otherwise not be found in previous personal relations. However the relationship may have arisen, where a party accepts property knowing that it is intrusted to him because of the confidence which another places in him, there is a relationship of confidence, abuse of which should not be tolerated by a court of equity. Here Malex and Normar, though separate entities, had, as I have said, the same stockholders and officers. Identity of stock ownership and control of two corporations does not justify the diversion of the property of the one to the treasury of the other. It does necessarily create a relationship of confidence, because at all times those who direct the corporations must act with knowledge that they may not abuse their trust to either. It has not been abused here. The officers of Normar applied Normar's money to the purchase of real estate, to be held for its benefit by Malex as its agent, and they did so with knowledge that Malex would not appropriate to itself the benefit derived from the ownership of the property it held for Normar. So long as they remained the officers of both corporations, it was impossible that one should abuse a trust placed in it by the other or enrich itself at the expense of the other.

Without transfer of record title of the property to Normar; there would be unjust enrichment of Malex at the expense of Normar, and indirectly both of its stockholders and creditors. The plaintiff is asking that a court of equity should interpose its powers and declare fraudulent a conveyance which Malex was under a moral, if not legal, duty to make. Such duty must be recognized by the courts, unless we disregard the separate entity and hold that all that has been done is merely part of a scheme by which the stockholders of the two corporations sought to evade liability for their just debts. I find in the record no basis for such a holding.

The judgment should be affirmed, with costs.

CRANE, O'BRIEN and CROUCH, JJ., concur with KELLOGG, J.; LEHMAN, J., dissents in opinion in which POUND, Ch. J., concurs; HUBBS, J., not voting.

Judgment accordingly.