NATIONAL REFINING COMPANY, Appellant, v. CONTINENTAL DEVELOPMENT CORPORATION and CHARLOTTE ZUCKERMAN.—No. 39476.— 189 S. W. (2d) 551.

Division Two, September 4, 1945.

Motion for Rehearing or to Transfer to Banc Overruled, October 1, 1945.

*Kenneth Teasdale* for appellant.

404

*Ben L. Shifrin* and *Taylor, Mayer, Shifrin & Willer* for respondents.

BARRETT, C.—By this action the National Refining Company seeks to set aside a conveyance of real estate from Charlotte Zuckerman to Continental Development Corporation and to subject the property to the payment of a deficiency judgment against Miss Zuckerman. The theory of the action is that the conveyance was in fraud of creditors. Mo. R. S. A., Sec. 3507.

The National Refining Company, desiring to sell its filling station at Southwest and Sulphur Streets in St. Louis, placed it in the hands of a real estate agent, Edward M. Thornhill. Mr. Thornhill had previously represented the company in its real estate transactions. Originally the sale of this property was to have been for cash. Accordingly,

after some negotiations with Mr. Glick of the Glick Real Estate Company, an earnest money contract for the sale of the property was entered into for $9000.00 cash. The contract of purchase was executed in the name of Charlotte Zuckerman and $300.00 earnest money was paid to Mr. Thornhill by the Glick Real Estate Company. The agreement for a cash sale of the property was not carried out. After Mr. Glick had determined to forfeit the $300.00 earnest money there were further negotiations with a view to selling the property on some other basis. Finally it was suggested that the property might be sold on the basis of a cash payment of $1000.00 with a note and deed of trust for the balance of the purchase price in the sum of $8000.00. Mr. Thornhill said that he would submit such a sale to the refining company's Kansas City office. Mr. Glick says that Thornhill suggested that he was already out $300.00 and that he might as well gamble another $700.00. In any event, a note and deed of trust were prepared and submitted to the company and after some charges in the terms of the deed of trust, suggested by the refining company, the transaction was consummated on that basis.

The Glick Real Estate Company paid Mr. Thornhill an additional $700.00 and on April 23, 1941 the National Refining Company executed a warranty deed to the property to Charlotte Zuckerman. She in turn gave the National Refining Company a note for $8000.00 secured by a deed of trust on the property. The note was for one year. One installment of $162.90 was paid by the Glick Real Estate Company directly to the National Refining Company's office in Kansas City. No other or further payments were made and on March 24, 1943 the deed of trust was foreclosed and the filling station was purchased at the foreclosure sale by the National Refining Company for $6000.00. In February 1944 a deficiency judgment was entered in favor of the refining company against Miss Zuckerman. National Refining Co. v. Zuckerman (Mo. App.), 183 S. W. (2d) 390.

Miss Zuckerman is a stenographer in the Glick Real Estate Company's office. Admittedly, in this transaction she was a "straw" party, as is the respondent Continental Development Corporation. For the purposes of this case she is and was insolvent and had no interest whatever in this or any other real estate. After she had attained her majority many pieces of real estate were held in her name and she had executed several notes and deeds of trust. On March 23, 1943, the day before the foreclosure sale was held Miss Zuckerman executed a quitclaim deed conveying twenty-five or twenty-six properties which then appeared in her name to the Continental Development Corporation. In the beginning this suit sought to set aside the transfer as to all of these pieces of property. Subsequently there was a release of all the property from the suit except the six parcels now in question.

Four of these tracts of real estate were conveyed to Miss Zuckerman in 1940 and 1941 prior to the sale of the filling station and the execution of the note and deed of trust by her. One tract was conveyed to her on the same day, October 27, 1941, the transaction was consummated and one tract was conveyed to her in 1942, after the transaction but before its foreclosure. The six lots, in fact, were jointly owned by Sam Schiffer, Hyman Gett, the Glick Real Estate Company, Phil Schiffer, Gus Gaines and Steinbaum Brothers. Except for Gett and Steinbaum Brothers, who were interested in but two of the lots, all these people were salesmen for or officers in the Glick Real Estate Company.

As we have said, neither Miss Zuckerman nor Continental Development Corporation have any financial interest in any of this property and there was no consideration for any of the conveyances to or from either of them. Under these circumstances and since the transfer from Miss Zuckerman was after the notice of foreclosure (Mo. R. S. A. Sec. 3484) and the day before the foreclosure sale, the National Refining Company contends that the transfer was in fraud of creditors and the land may therefore be subjected to the payment of its deficiency judgment (Conrad v. Diehl, 344 Mo. 811, 129 S. W. (2d) 870; Godchaux Sugars, Inc., v. Quinn (Mo.), 95 S. W. (2d) 82) ▮ even though it be assumed that the beneficial owners of the six lots, except the Glick Real Estate Company, had nothing to do with the principal transaction and even though there is no judgment against the Glick Real Estate Company or its representatives for the deficiency.

The trial court found, as the respondents admit, that the Glick Real Estate Company was the real purchaser of the filling station and that Miss Zuckerman had no interest in it but merely held the title for the real estate company. The court also found that she had no interest in the six tracts of land involved in this action but merely held the title to them for the real owners and conveyed the lots to their nominee, the respondent Continental Development Corporation. The court found that the National Refining Company was fully aware of the fact that Miss Zuckerman was a "straw" party, had no beneficial interest in either the filling station or the six tracts of land and that credit was not extended to her in reliance upon her ownership of any property. Accordingly the court found that the transfer was not fraudulent as to the refining company's judgment.

▮ There are many motives, some good and some bad, for transferring real estate to "straw" parties and executing purchase money notes and deeds of trusts in their names. Gill, Strawmen In Missouri, 14 Mo. Bar J., pp. 98-102. In the absence of fraud or deceit by the real owners or in the absence of other misconduct to those dealing with the straw party or the property, the mere fact of a conveyance to one who has no interest in the property merely for the purpose of

holding the title or for the purpose of executing a purchase money note and deed of trust and thus limiting the liability of the actual owner or purchaser to the security of the real estate sold (25 Wash. U. I. Q., pp. 232, 237) is not in and of itself fraudulent. Benton v. Alcazar Hotel Co., 352 Mo. 836, 845, 846, 180 S. W. (2d) 33, 38; Citizens Bank v. Burrus, 178 Mo. 716, 77 S. W. 748; Siess v. Anderson, 159 Mo. App. 656, 660, 139 S. W. 1178. Of course, if the actual owner knows that credit is being innocently extended to his "straw" grantee in reliance on his apparent solvency and his apparent ownership of real estate, and actual beneficial ownership is concealed, the circumstances are altered. Singer Mfg. Co. v. Stephens, 169 Mo. 1, 68 S. W. 903. And the real question is whether there are circumstances in this case, other than the mere transfer to and execution of the note and deed of trust by the "straw" grantee and her "straw" holding of other property, making this conveyance fraudulent as to the National Refining Company, DeBerry v. Wheeler, 128 Mo. 84, 89, 30 S. W. 338; 25 Wash. A. L. Q. 255.

As we have said, the refining company does not seek or have a deficiency judgment against the Glick Real Estate Company, the actual purchaser (H-D Realty Co. v. Unemployment Comp. Comm., 350 Mo. 690, 168 S. W. (2d) 78), nor does it claim that its acceptance of Miss Zuckerman's note and deed of trust were conditional and that someone else had actually agreed to pay the debt or the purchase price. Scheer v. Brooks, 333 Mo. 1201, 65 S. W. (2d) 107. The refining company contends that if the transaction is otherwise valid that it may yet recover in this action because it did not have actual notice of the fact that she was not the beneficial owner of other real estate and, therefore, the transfer was fraudulent as to it and the real owners are estopped to deny her apparent ownership and apparent solvency.

But, the National Refining Company entrusted the sale of its filling station to Mr. Thornhill. His first authorization was to sell for cash but when he was unable to dispose of the property on that basis he submitted to the refining company the proposition of a sale for $1000.00 cash and a note and deed of trust for the balance of the purchase price. The company's Kansas City office passed on the proposition, approved the deed of trust and authorized the transaction. It should be noted that the refining company does not contend that the sale made was not actually authorized but merely that it did not have actual notice of the straw nature of Miss Zuckerman's title and that it had a right to rely on a note and deed of trust by a solvent, property owning mortgagee. However, it does not claim that that was its contract or Thornhill's specific authorization and so these terms may not be read into the transaction. According to him nothing was

said as to his right or authority to deal with a straw party. Benton v. Alcazar Hotel Co., 352 Mo. l. c. 845, 180 S. W. (2d) l. c. 38.

It is true, as he testified, that he did not advise the National Refining Company, though he well knew the fact, that Miss Zuckerman was a straw party so far ▮▮▮ as the filling station transaction was concerned and that other property held by her in fact belonged to others. But, as he also says, he had dealt with these parties, the actual purchaser and Miss Zuckerman, before. He knew that she was a stenographer in the real estate office and had no actual interest in any property transferred to her and he knew that she often executed notes and deeds of trust under such circumstances. The consequence is that the National Refining Company had whatever knowledge Thornhill had, even though he did not inform the company of all the facts,— unless he was guilty of fraud or collusion and acted contrary to the interests of his employer. 3 C. J. S. Secs. 262, 265, 269; 1 Restatement, Agency, Secs. 274, 275, 282. "Plaintiff knew that Padfield was financially irresponsible, that he was a 'straw man.' We say he knew it because his agent, Altheimer, knew it." Fuchs v. Leahy, 381 Mo. 47, 57, 9 S. W. (2d) 897, 901.

▮ Thornhill, as the trial court found, was not a party to a fraudulent scheme or personally and financially interested in the transaction adversely to the interests of his principal,—a finding which would have exonerated the refining company of Thornhill's knowledge. Smith v. Boyd, 162 Mo. 146, 62 S. W. 439; Traber v. Hicks, 131 Mo. 180, 32 S. W. 1145; Van Raalte v. Epstein, 202 Mo. 173, 99 S. W. 1077. His only financial interest was in his commission from his principal, one-half of which he agreed to and did refund when it became necessary to foreclose the deed of trust and the purchase price was not paid. It is not contended that he acted adversely to the interests of his principal in either of these respects but that knowingly he did not procure a sale of the property to a purchaser who bona fidely intended to pay for it and satisfy the note. However, his explanation for that is that the note was taken for the short term of one year with the understanding that extensive improvements were to be made on the property and that the indebtedness, including the improvements, was to be refinanced and the note for the purchase price paid at the time of the refinancing. This was not done, he says, because of the subsequent scarcity of labor and materials and because of unavailable priorities.

▮ It is our view of the case that the only conduct upon which the appellant ultimately relies as constituting fraud is the "straw" nature of the transactions. And, in as much as the refining company had the knowledge its agent had, that Miss Zuckerman was a "straw" party in both the note and deed of trust transaction and holding title to the six parcels of real estate, there was no reliance upon her solvency

or her ownership of other land as additional security for the payment of the purchase price of the filling station and consequently there could be no estoppel (37 C. J. S. Sec. 25) and the transfer was not fraudulent. "The real security was the property pledged for their payment by the deed of trust . . . " Sporing v. Dittmeier (Mo. App.), 213 S. W. 176, 177. In its essentials, as to both agency and straw parties, the case is indistinguishable from Fuchs v. Leahy, supra, and Mesker v. Harper Real Estate & Investment Co. (Mo. App.), 221 S. W. 407. The opinion of the St. Louis Court of Appeals in the latter case was adopted as the opinion of the court en banc in State ex rel. Mesker v. Reynolds, 245 S. W. 1065, 25 A. L. R. 1484. The conclusion of that opinion is "Respondents evidently purchased the note, secured by the deed of trust, because they thought the property worth the amount of the incumbrance, or, if they did not, they cannot complain that they thought the note was signed by the Friedmans, for they admit they trusted entirely to their agent, and never examined the papers or the note at the time they purchased the loan to see who had signed it."

Whether, under the same facts, the case of Fraw Realty Company v. Natanson, 261 N. Y. 396, 185 N. E. 679, would or should be followed we need not decide. There are these fundamental differences in the two cases; in the Fraw Realty case the "straw" purchaser in fact received financial benefits from the property, in the form of rents which were subsequently diverted and furthermore, in this case, the seller had an agent who had full and complete knowledge of all the facts and so we have no circumstances here other than a known "man of straw" transaction.

The judgment is affirmed. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.