HAROLD A. MERRILL and JOHN P. LYNN, Appellants, v. GEORGE H. DAVIS, E. O. DAVIS, and DAVIS-NOLAND-MERRILL GRAIN COMPANY, Respondents, No. 41263—225 S. W. (2d) 763.

Division One, January 9, 1950.

*Charles M. Miller* for appellants.

1194

*Paul R. Stinson* and *Lawrence R. Brown* for respondents; *Stinson, Mag, Thomson, McEvers & Fizzell* of counsel.

**VAN OSDOL, C.**—Derivative action by minority stockholders, plaintiffs, in behalf of Davis-Noland-Merrill Grain Company, a Missouri corporation, against the corporation and defendants George H. and E. O. Davis, directors, to have title to realty and personalty in Kansas vested in the corporation, and to cancel certificates of 7538 shares of common stock (issued to "G. H. Davis, President") and to cause such shares to be returned to the corporation as treasury stock. The trial court found and entered a decree for defendants. Plaintiffs have appealed.

The case presents questions of a stockholder's right to maintain an action in the right and on behalf of the corporate entity.

Defendant corporation has 15,000 shares of capital stock of par value $100 per share. 7538 of the 15,000 shares have been bought by the corporation with corporate funds. When this action was instituted plaintiffs, Merrill and Lynn, owned 1338 shares of stock; and defendants George H. Davis and E. O. Davis, husband and wife, respectively owned 3991 and 300 shares. Ranches (with livestock and other personalty thereon) of approximately 48,980 acres (and some town lots) in Kansas have been bought with corporate funds. The title to the realty is shown of record in Kansas to be in defendant George H. Davis, and the certificates evidencing the 7538 shares of stock are shown by the corporation's stock book to have been issued to "G. H. Davis, President." The shares so evidenced are of the alleged value of over $1,000,000. There was evidence the realty and personalty in Kansas is of more than $860,000 value.

It is the purpose of plaintiffs' action to enforce a resulting trust and to cause title of defendant George H. Davis to be divested and the corporation vested with the title to the lands and personalty in Kansas; and, as stated, to cause the certificates (issued to "G. H. Davis, President") to be canceled and the shares returned to the corporate defendant as treasury stock. Plaintiffs' action presupposes a theory the lands and personalty including the 7538 shares of stock, of value as stated supra, are lost to the corporate defendant unless equitable relief is afforded. It thus appears the asserted right of the corporation to the realty and personalty, which right plaintiffs seek to enforce or protect on behalf of the corporation, is of money value greatly in excess of $7500, and it follows that the relief sought (in establishing the corporation's right), if granted in accordance with plaintiffs' theory, would be of money value to the corporation and

loss to defendants Davis, or vice versa, should the relief sought be denied, greatly in excess of $7500. This court has appellate jurisdiction on the ground of "amount in dispute." Compare State ex rel. Wurdeman v. Reynolds, 275 Mo. 113, 204 S. W. 1093 (criticized on another point, State ex rel. Kopke v. Mulloy, 329 Mo. 1 at page 15, 43 S. W. 2d 806 at pages 812-813); Vol. 13, Fletcher Cyclopedia Corporations, Permanent Ed., § 5988, p. 365; 21 C. J. S., Courts, § 57 at page 71; Section 3, Article V, Constitution of Missouri, 1945, Mo. R. S. A. § 3, Art. V.

The corporation, defendant Davis-Noland-Merrill Grain Company, was organized in 1923, with $600,000 stated capital, 6000 shares, for the purpose of dealing in grain. Defendant George H. Davis was president; Nicholas Noland was vice-president; and plaintiff Harold A. Merrill, treasurer. These three and W. W. Kilworth constituted the board of directors. The corporation prospered.. In 1933 the stated capital was increased to $1,500,000, and the articles of incorporation were amended to authorize the corporation to buy lands, operate ranches, and engage in the cattle business..

Commencing in 1934, the corporation bought numerous tracts of land and integrated five ranches in Kansas. The record titles to three ranches and to some town lots (which realty is involved in the instant action) are in defendant George H. Davis. The two other ranches were subsequently, in November 1943, sold by the corporation to plaintiff Merrill. When these two ranches had been purchased the record title to one was placed in the name of defendant George H. Davis, and the record title to the other in plaintiff Harold A. Merrill. When Davis and Merrill so acquired the record titles to the five ranches, they and their wives signed and acknowledged deeds in blank describing the acquired lands, which deeds were attached to the various and respective conveyances to Davis and Merrill and all of the instruments were placed and kept in the corporation's vaults. (When plaintiff Merrill bought the two ranches from the corporation in November 1943, the deed in blank signed and acknowledged by Merrill and wife was destroyed; and the blank deed signed and acknowledged by Davis and wife was completed by filling in the name of Merrill as grantee, and the completed instrument delivered to him.) Cattle and other personalty were bought and ranged and used on the lands. The brands used on the cattle are registered in Kansas in the name of defendant George H. Davis.

In the year 1937 the corporation had bought the shares (3853) of Nicholas Noland. By resolution of the board, the stock represented by the shares so purchased of Noland was not to be retired but was to be held in the corporation's treasury for resale at such time and for such consideration as the board might determine. The Noland certificates were canceled and new certificates were issued to "G. H. Davis, President." The new certificates were assigned or endorsed

in blank by "G. H. Davis, President" and given to the office manager to place in the corporation's vaults.

In 1943 defendant George H. Davis, personally, purchased the shares of stock belonging to W. W. Kilworth.

Disagreements arose between defendant George H. Davis and plaintiff Merrill, concerning salaries of employees, and the purchase of the Kilworth stock. Plaintiff Merrill desired the shares bought of Kilworth to be handled as were the shares bought of Nicholas Noland, that is, paid for with corporate funds, surplus and undivided profits, and the stock not retired but identified as treasury stock. The purchase of Kilworth's shares made Davis the majority stockholder. Theretofore Davis and Merrill had owned corporate stock of approximate equality in number of shares. The disagreements led up to the purchase by the corporation in November 1943 of 2632 shares of Merrill's stock and 1053 shares of the stock of defendant George H. Davis, and to the sale of the two ranches, mentioned supra, to Merrill. According to resolution of the board of directors, the stock bought of Merrill and Davis was not to be retired but was to be held in the corporate treasury for resale purposes. As was true with reference to the shares bought of Noland, the certificates of shares bought of Davis and Merrill were canceled and new certificates were issued to "G. H. Davis, President," which certificates were assigned or endorsed in blank by "G. H. Davis, President," and placed (and have remained) in the corporation's vaults. Plaintiff Merrill continued as treasurer of the corporation until the following December 31st, and as a director until January 9, 1945.

The operation of the cattle ranches in Kansas has been carried on in the name of defendant George H. Davis. The operation ▮▮▮▮ has been successful. Receipts are and have been paid in to Davis and by him paid over to the corporate defendant. Operating expenses have been paid out by the checks of the corporation. It is not contended defendant Davis has diverted any of the moneys received in the operation of the Kansas ranches. "The company got the money."

Now the evidence introduced tends to show the manner of handling the transactions, mentioned supra, relating to the particularly involved lands and personalty including the treasury stock was on the advice of counsel. The transactions relating to the lands and personalty thereon (and, it seems, the registration of cattle brands) were, according to counsel's advice, to protect the corporation from possible litigation in Kansas, under the provisions of statute of Kansas (General Statutes of Kansas, Annotated, 1935, § 17-202a, p. 361; and see State ex rel. Boynton v. Wheat Farming Co., 137 Kan. 697, 22 P. 2d 1093) which prohibits a corporation from engaging in the agricultural business of producing grain; and the method of handling the transactions relating to the treasury stock was employed for income-tax purposes;

to make sure the stock bought by the corporation (from Noland, Davis and Merrill) was conclusively "earmarked" as treasury stock; and to facilitate the sale and transfer of the stock should the corporation need additional working capital. There seems to be no question relating to the intention the purchased 7538 shares should be held by the corporation as treasury stock. The stock was carried on the books of the corporation and shown by the audits of the corporation's financial condition as "treasury stock." The stated capital has not been reduced in conformity with statutory provisions. The General and Business Corporation Act of Missouri, Laws of Missouri, 1943, § 60, pp. 444, 445, Mo. R. S. A. § 4997.60. Counsel for defendants testified it was his opinion the production of grain is but incidental in the operation of Kansas ranches, and not in violation of the Kansas statute. It would seem the corporation could not lawfully do through the subterfuge of a nominee that which it could not lawfully do as a corporation. It is most important to notice it is neither contended nor shown that the operation of the Kansas ranches (as presently operated) in the name of Davis, or the operation of the ranches (as presently operated) in the corporate name is or would be illegal. See and compare Ashwander v. Tennessee Valley Authority, 297 U. S. 288, 56 S. Ct. 466, cited by plaintiffs-appellants. A witness for plaintiffs testified the reissuance of the purchased stock was not essential to the stock's preservation as treasury stock. Plaintiffs-appellants therefore urge there is no reason for refusing the equitable relief—a resulting trust.

Plaintiffs-appellants say the record title to the lands being in him, defendant George H. Davis could convey to a bona fide purchaser; and they say defendant Davis may incur personal obligations to creditors who, having extended credit on the strength of the record title, might cause extended litigation; and they say defendant Davis is in a position to personally negotiate (the treasury stock) certificates issued to him to an innocent purchaser. And they conceive of other complications which could possibly obtain. It has not been alleged nor is there any evidence that any of these possibilities have in any way come to pass, nor has it been pleaded or shown that any of these possibilities are imminent or threatened; and the directors have not caused the corporation to seek equitable relief.

It is proper to here state the personnel of the corporate directorate. The directors are defendants, George H. Davis and wife E. O. Davis, as stated; and two corporate employees whose salaries are fixed by defendant George H. Davis. One of the director-employees is a nephew of defendants Davis.

We have examined the record and agree with the trial chancellor—there is neither charge nor evidence of "any acts of misconduct, bad faith, or dishonesty on the part of defendants or other managing agents of the corporate defendant." The chancellor was of the opinion that, in such a case, a court cannot "be called upon to

run the internal affairs of a corporation or determine its business policies."

It has been noticed that many corporations and individuals transact business affairs in the names of straw men or nominees. Such a manner or way of transacting business has been examined by the courts. The motives, honest and dishonest; and the advantages and disadvantages, pitfalls and dangers of vesting title to real property in a nominee or straw party have been observed by McCune Gill in "Straw Men in Missouri," M. B. J., Vol. 14, p. 98; and by Robert N. Cook in "Straw Men in Real Estate Transactions," W. U. L. Q., Vol. 25, p. 232. It has been said the use of a straw party in real-estate transactions is not in itself unlawful or fraudulent. National Refining Company v. Continental Development Corp., 354 Mo. 402, 189 S. W. 2d 551; Benton v. Alcazar Hotel Co., 352 Mo. 836, 180 S. W. 2d 33, and cases therein cited.

The defendant, George H. Davis, has not denied and does not deny but affirms the beneficial ownership of the land, and of the live-stock and equipment on the land, is in the corporate defendant. He has not and does not claim but disclaims beneficial ownership of the shares issued to and assigned in blank by him. He asserts the shares so issued to him and assigned by him in blank and placed in the corporation's vaults represent treasury stock. The Kansas land and personalty are carried on the corporate books as assets of the corporation. And the (7538) shares of stock, as stated, are carried on the corporate books, as "treasury stock," and are shown on the balance sheets of the corporation's annual audits as "treasury stock."

The beneficial interest in the land having been shown to be in the corporate defendant because of the purchase of the property with corporate funds and the record or legal title to the property having been shown to be in defendant Davis, the corporation could enforce the transfer of the record title to it by appropriate action in equity on the theory of a resulting trust. Plaintiffs-appellants correctly say fraud is not essential to the relief—a resulting trust. Mercury Club v. Keillen, 323 Ill. 24, 153 N. E. 753; Muller v. Schram, 100 N. J. Eq. 143, 134 Atl. 657; Hynds v. Hynds, 253 Mo. 20, 161 S. W. 812. Plaintiffs further assert the same theory of recovery is applicable to the "treasury stock." Of course, the directors could cause the cancellation or change of the certificates of (treasury) stock now shown on the stock book as issued to "George H. Davis, President." But the directors have not undertaken and have, in effect, refused to bring about such a change and such equitable relief. So we are confronted with the question whether plaintiffs, minority stockholders (where there has been no illegality; and no bad faith and no dishonesty of the corporation's managerial officers or directors, and no fraudulent or oppressive or injurious or destructive act has been committed or threatened to be committed by the corporation's management or

directorate) may invoke the powers of a court of equity in the defendant corporation's behalf, notwithstanding the directors for reasons to them deemed sufficient have elected not to insist upon the corporation's right.

It is true, as plaintiffs-appellants urge, defendants Davis own the majority of the shares of corporate stock; that defendant George H. Davis, a majority stockholder, director and president, is the active and dominant managerial officer of the corporation; and that methods of handling the title to the realty and personalty in Kansas and the issuance of the certificates of treasury stock, as stated supra, are in some large measure the result of the exercise of the judgment of defendant George H. Davis. And, if the evidence as a whole had sustained a case of wrongful failure of the directorate to institute the action in the corporation's behalf, no doubt the trial chancellor would have afforded equitable relief. We have kept in mind officers and directors of a corporation, while not regarded as trustees in a strictly technical sense, "are considered in equity as bearing a fiduciary relation to the corporation and its stockholders." Vol. 3, Fletcher Cyclopedia Corporations, Permanent Ed., § 838, p. 173; Punch v. Hipolite Co., 340 Mo. 53, 100 S. W. 2d 878.

Bearing in mind the fiduciary relation the defendant Davis bore to the corporation and stockholders, we have endeavored to subject his shown conduct relating to the Kansas properties and the treasury stock to our most painstaking scrutiny. We have tried to carefully examine the entire record and have not found evidence of an equivocal word or act of defendant Davis or of other corporate officers and directors from which it could be reasonably inferred the directors' judgment of the manner of handling the lands and personalty including the treasury stock is actuated by any motive other than to promote the interests and facilitate the business of the corporate defendant. On the other hand, as stated supra, there was evidence tending to show the reasons, wise or unwise, sound or unsound, which prompted the stated way of handling of the Kansas properties and treasury stock, which evidence, in our view, clearly shows Davis and the other officers and directors (including plaintiff Merrill, who, as stated, was treasurer until December 31, 1943, and director until early January, 1945) have acted honestly in the exercise of their judgment in good faith in the interests of the corporation and consequently and incidentally in the interests of all of the stockholders.

"Where, as is customary, the management and control of the corporation is vested by a statute or the charter, not in the stockholders or members, but in a board of directors and trustees, their action in regard to the affairs of the corporation is controlling and exclusive, and the stockholders or members cannot control the directors or trustees in the exercise of the judgment vested in them by the

charter. Their function is to exercise judgment and discretion which the courts cannot do in their stead." Vol. 5, Fletcher Cyclopedia Corporations, Permanent Ed., § 2104, p. 357; Federal Land Bank of St. Louis v. Bross, Mo. App., 122 S. W. 2d 35; Post v. Buck's Stove & Range Co., 200 F. 918; the General and Business Corporation Act of Missouri, Laws of Missouri, 1943, § 36, p. 433, Mo. R. S. A. § 4997.36.

The control of litigation and the decision to litigate or not is in the directors, and, until they improperly fail or refuse to sue or defend in the corporate name, the stockholders cannot do so, and then must sue in right of the corporation in equity making a case of wrongful refusal to sue. Vol. 5, Fletcher Cyclopedia Corporations, Permanent Ed., § 2104, at page 361; Ratermann Building & Contracting Co. v. Missouri Portland Cement Co., 347 Mo. 12, 145 S. W. 2d 422. Corporations like individuals often have enforceable rights which it is deemed best not to press to suit. Hawes v. Oakland, 104 U. S. 450; Post v. Buck's Stove & Range Co., supra. The case of Checotah Hdw. Co. v. Hensley, 42 Okla. 260, 141 Pac. 422, cited by plaintiffs-appellants, treated with the sufficiency of plaintiff's petition in stating a case for wrongful failure to sue. It is not known to us what issues may have been raised and determined upon a retrial on an amended petition. In the Hawes case (104 U. S. at page 460) the Supreme Court of the United States outlines the principles governing the class of cases in which a stockholder may sustain an action in his own name founded on a right of action existing in the corporation itself. (But the court wisely observed other cases might possibly arise in which, to prevent irremediable injury, or a total failure of justice, a court of equity would be justified in exercising its powers.) In Laumeier v. Sun-Ray Products Co., 330 Mo. 542, 50 S. W. 2d 640, a proceeding of receivership, this court said, "There is abundant authority that a court of equity is without jurisdiction to take over the affairs of a corporation merely for the purpose of adiministering its internal affairs in conformity with the desires of minority stockholders."

The decree for defendants should be affirmed.

It is so ordered. *Bradley, C.,* concurs.

PER CURIAM: The foregoing opinion by Van Osdol, C., is adopted as the opinion of the court. All the judges concur.