The writer of the opinion is the author of these comments.

The motions for rehearing, or to modify the opinion, or to transfer to the court en banc are overruled.

Loretta K. LAMBERT, Plaintiff-Respondent,

v.

Ruby M. CLARK, John F. Day and Barbara M. Day, his wife, Defendants-Appellants.

No. 44030.

Supreme Court of Missouri.

Division No. 1.

Jan. 10, 1955.

Motion for Rehearing or to Transfer to Court en Banc Denied Feb. 14, 1955.

241

Ralph R. Giessow, Clayton, for defendant-appellant.

Lusser & Dorsey, Rene J. Lusser, Gerard M. Dorsey, St. Louis, for respondent.

COIL, Commissioner.

Loretta K. Lambert, respondent (herein sometimes called plaintiff) brought an action to cancel a deed and quiet title to real estate in St. Louis. She is the widow and sole taker (heir) under the statute of descent and distribution, Section 468.010, RSMo 1949, V.A.M.S., of her husband, Charles M. Lambert, who died intestate on June 4, 1951.

Ruby M. Clark, appellant (herein sometimes called defendant) claimed title to the real estate by virtue of a fact that she was the record title holder at the time of the death of Charles M. Lambert and claimed to have purchased the property. Subsequent to Lambert's death, defendant conveyed the property to her daughter and son-in-law (Mr. and Mrs. Day), who were joined as defendants below and who de-

faulted. Defendant admitted at the trial that the conveyance to the Days was without consideration and that it was not intended to transfer ownership to them. Thus, there was no issue below, nor is there one here, concerning the deed to the Days. That is to say, if plaintiff is the fee simple owner of the real estate in question but for the Day deed, then it is conceded that that deed was properly canceled.

The trial court adjudged plaintiff to be the fee simple owner subject to plaintiff's assumption of the balance due on certain notes executed by defendant and secured by a deed of trust on the property involved, and ordered the cancellation of the Day deed. Among other things, the trial court found that defendant, Ruby M. Clark, was a straw party who held the record title for the benefit of Charles M. Lambert. As we view it, if this finding by the trial court was correct, it is decisive of the only real issue in this case. We are of the opinion, upon our independent examination of the transcript, in which we have weighed the evidence and reached our own conclusions, that the noted finding of, and that the decree and judgment of, the trial court were correct.

Plaintiff proved by clear and convincing evidence—much of it documentary and none of it seriously controverted—the facts which justify these statements. Charles M. Lambert, for a number of years prior to his death, was a salesman for H & K Realty Company. Mr. and Mrs. Redman were also salesmen for that company. Mr. Lambert owned property on Oriole Avenue which he later traded for property on Floy Avenue and, in real estate transactions involving both those properties, Mr. and Mrs. Redman acted as straw parties for Lambert. Lambert had represented to the Redmans that Mrs. Lambert (plaintiff) was mentally ill and that he wished to avoid the troubles connected with later transfers of the property in the event that titles were put in his (Lambert's) name. (Mrs. Lambert, incidentally, was never mentally ill, but, in our view, this fact is of no vital importance.)

In November 1945 Lambert wanted to acquire the property here involved, a 4-family flat on Natural Bridge Road. The purchase price was $10,500. Lambert used the ultimate proceeds of the Oriole and Floy Avenue properties, but needed an additional $7,500. Mr. and Mrs. Redman, as straw parties for Lambert, executed a deed of trust in the amount of $7,500 to secure a loan in that amount, made by H & K Realty Company, on the Natural Bridge property. The property was purchased and title put in Mr. and Mrs. Redman as straw parties for Lambert. Mr. and Mrs. Redman immediately executed a quitclaim deed to the property (grantee's name not inserted) and delivered the deed to Lambert. The record title remained in Mr. and Mrs. Redman until the $7,500 deed of trust came due. At that time Lambert requested Mr. Kroeger, president of H & K Realty Company, to renew the deed of trust for an amount in excess of $7,500. Mr. Kroeger refused to do so and asked that Lambert obtain a new loan elsewhere. At the same time, Mr. and Mrs. Redman, the straw parties, asked to be relieved of their responsibilities as such, and refused to act as straw parties in any new transaction in which Lambert might obtain a loan on the property in an amount in excess of $7,500. Mr. Lambert told the Redmans that he would arrange to put the property in some other person's name. Consequently, on December 7, 1948, the Redmans, at the request of Lambert, signed a quitclaim deed conveying the property to Ruby M. Clark. They, of course, received no consideration from Mrs. Clark. At the death of Charles M. Lambert the quitclaim deed from the Redmans to Ruby Clark and a partially completed quitclaim deed signed by Ruby M. Clark (which she executed as grantor but in which no grantee was named and which was not recorded) were both found in Mr. Lambert's safe-deposit box. On November 21, 1949, Mr. Lambert obtained a loan of $10,500 on the property from Investment Service, Inc. Defendant, Ruby M. Clark, executed the deed of trust and principal and interest notes securing the $10,500 loan. The proceeds of the loan, by direction of Mrs. Clark, were paid to Mr. Lambert by means of two checks, one in the amount of $7,687.50, the amount then due on the $7,500 deed of trust (which amount was in turn paid to H & K Realty Company by Lambert), and the other for $2,604.95, the balance of the $10,500 loan. Lambert was required by the lender to endorse the principal and interest notes and he was carried on the lender's records as the principal in the transaction. All of the interest notes that came due prior to Mr. Lambert's death were paid by him.

Later, on August 11, 1949, an F. H. A. home improvement loan was secured for the Natural Bridge property in the amount of $2,000, with Ruby M. Clark and Charles M. Lambert as cosigners of the F. H. A. credit applications and of the note evidencing the loan. This loan was to be repaid in 35 monthly payments of $63.88 and one monthly payment of $63.79. These monthly payments (at least all the payments about which there was any proof) were made by Mr. Lambert prior to his death.

Subsequent to the time the record title to this property was put in the name of Ruby M. Clark, Mr. Lambert collected the rents from the tenants. He instituted and prosecuted proceedings under OPA for the purpose of evicting certain tenants and executed and filed the necessary papers to institute and prosecute such suits as landlord and appeared as the plaintiff in the resulting action to gain possession of the apartments. He listed in his federal income tax returns for the years 1946 to 1950, inclusive, the income and disbursements from and made on account of, the Natural Bridge property, and took credit therefor in those returns.

Plaintiff did not know of her husband's beneficial ownership of the property until after his death.

Based on the foregoing evidence, we think the conclusion is compelled that Ruby M. Clark was intended to be, and at all times was, the straw party for Charles M. Lambert and held the title to the property for his use and benefit. Defendant's contention to the contrary, as we understand it, is simply this: that because defendant exe-

cuted a deed of trust and notes for $10,500, the proceeds of which loan were paid to Charles M. Lambert, therefore, she was the purchaser of the property and had paid full consideration for it. It seems to us that this argument begs the decisive question. That is to say, if Mrs. Clark was in fact a straw party for Charles M. Lambert, then her execution of the deed of trust and notes, with directions to pay the proceeds to Lambert, were the very functions she would perform as a straw party. In other words, the facts that she obligated herself for the $10,500 loan secured by the property and that Lambert received the proceeds are wholly consistent with the conclusion that she was in fact Lambert's straw, and these circumstances, standing alone, are not probative evidence to support her contention that she was the real owner of the property rather than the straw for Charles M. Lambert. And so also as to defendant's reliance upon having signed F. H. A. loan applications and a note for the loan along with Charles M. Lambert in which applications she was listed as the owner. Certainly it was necessary that the record owner of the property sign those applications and sign the note. Under the circumstances, no decisive significance may be attached to the fact that Mrs. Clark was described as "owner" in these applications. She was the record owner and she was described as such.

No other evidence appears in the case to refute, or cast doubt upon, the clear and convincing evidence offered by plaintiff. It is true that Mrs. Clark could not testify to transactions between her and Lambert, but no other evidence, oral or documentary, was offered indicating in any respect that defendant, prior to Lambert's death, occupied any position with respect to the property other than as Lambert's straw.

We have held that the use of a straw party in real estate transactions is not in itself unlawful or fraudulent. Merrill v. Davis, 359 Mo. 1191, 1199[2], 225 S.W.2d 763, 767[2]. The rights of third parties have not been affected by the transaction described in evidence and the rights of third parties are not involved. The sole question here is between the straw party herself and the sole heir of the beneficial owner.

We hold that defendant held the title to the Natural Bridge property as a straw party for, and for the sole use and benefit of, Charles M. Lambert. Charles M. Lambert died intestate, possessed of the equitable or beneficial title to the property. Plaintiff, as the sole taker (heir) under the statute of descent and distribution was the real owner of the fee simple title and was entitled to be so adjudged.

Defendant contends that plaintiff is estopped to claim the property. We are unable to follow her argument in this respect, but in any event, aside from the fact that estoppel was not pleaded, no question of estoppel arises under the facts here.

Defendant also contends that plaintiff is barred by the provisions of Section 469.210, RSMo 1949, V.A.M.S. which provides, inter alia, that if a wife abandons a husband without reasonable cause and continues to live separately and apart for a year next preceding his death, she shall be barred from having her dower, homestead or jointure or statutory allowances. Apart from the fact that it is doubtful that this statute has any application under the facts here (a question we do not decide) irrespective of whether the evidence showed abandonment, and noting that no issue involving the provisions of this statute was made by the pleadings, and that no specific assignment was in the motion for new trial raising this question in the trial court, sufficient to dispose of this contention in this case is the fact that the evidence clearly shows that the circumstance that plaintiff and Charles M. Lambert lived apart at the time of his death was due to his refusal to furnish a home in which plaintiff could live with him.

The judgment is affirmed.

VAN OSDOL and LOZIER, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur except WESTHUES, J., not sitting.